## MARSHALL v. BLACKSHIRE.

1. **Practice:** INTERROGATORIES TO A JURY: ANSWERS. Interrogatories propounded to a jury which, when answered, are designed to be in the nature of a special verdict, should be of such a form that they may be answered by *yes* or *no*, or in some other brief and pertinent way.

2. **Tort:** KILLING OF DOMESTIC ANIMALS BY DOGS. The owner of domestic animals is justified in killing a dog which is harassing, maiming or worrying the animals, and the killing is justifiable even if at the time the dog is not committing the act, provided his conduct is such as to excite a reasonable apprehension that he is about to do so.

*Appeal from Webster Circuit Court.*

SATURDAY, OCTOBER 21.

ACTION to recover the value of a dog, maliciously and willfully shot and killed by the defendant.

The answer denied the allegations, and averred " the dog was killed on defendant's premises while in the act of chasing, worrying, injuring and killing his domestic animals, consisting of horses, cattle, hogs, hens and chickens."

There was a jury trial, verdict and judgment for the plaintiff, and defendant appeals.

*Richards & Springer*, for appellant.

*Botsford & Yeoman*, for appellee.

SEEVERS, CH. J.—I. At the proper time defendant asked the court to submit the following interrogatory to the jury, to be answered by them as a part of their verdict: "Had the dog in question, a short time before being killed, been chasing or worrying defendant's chickens on defendant's premises, and, at or about the time of being killed, had he again returned to defendant's premises for the *purpose* of worrying and chasing chickens," etc.

1. PRACTICE: interrogatories to jury: answers.

The testimony is before us, and we are unable to find any error in the refusal of the court to submit this interrogatory to the jury. It is not capable of either an affirmative or negative answer. Two or more distinct facts or transactions are grouped together. How the purpose of the dog in returning to the premises, except by ascertaining what he did and therefrom determining his purpose, could be found by the jury, we cannot conceive.

Interrogatories propounded to a jury which, when answered, are designed to be in the nature of a special verdict, should be clear and distinct, and capable of being answered either "yes" or "no," or in some other brief and pertinent way; otherwise, their only tendency is to confuse the jury.

II. The defendant asked that the court instruct the jury as follows: "1. If the dog in question went upon the defendant's premises and drove the defendant's chickens away from their feed, and after being driven away by defendant, again returned to defendant's premises and drove his chickens away from their feed, and the defendant immediately thereupon shot said dog, he is not liable, and you will so find.

2. TORT: killing of domestic animals by dogs.

"2. In order to exempt the defendant from liability for killing the dog in question, if he did kill him, it is not necessary that said dog should have, at the time of the killing, been in the act of maiming or injuring the defendant's chickens, that if he was harassing the same or troubling them by driv-

ing them away from their feed, or chasing them about, the defendant was justified in killing said dog upon his premises."

These instructions were refused, and the jury instructed as follows:

" 5. . The defendant will be liable in this action if he killed the dog, unless he caught the dog in the act of worrying or killing his chickens.

" 6. If he caught the dog in the act of killing or worrying his chickens he was justified in killing him. The fact that his chickens were afraid of the dog, and ran from it, would not authorize the killing, unless the dog was worrying or killing them. To worry means to run after, to chase, to bark at.

" 7. It was not necessary that the dog should have been, at the very instant of the shooting, in the act of worrying or killing the defendant's chickens, in order to justify the shooting of it, but if the dog had been worrying or killing the defendant's chickens, upon his premises, and at the time he was killed, his conduct was such as to create in the mind of the defendant a reasonable apprehension of continued or renewed worrying or killing, and while under such apprehension, exercising the care and prudence which reasonable men usually exercise under like circumstances, he shot the dog, the shooting was rightful and the plaintiff cannot recover."

The circumstances that will justify the killing of a dog are defined by statute as follows: " It shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lambs or other domestic animals." Code, Sec. 1485.

We are of the opinion the instructions given fairly embody the correct rule, and that the refusal to give those asked by the defendant did not constitute error.

The principal objection taken to the instructions given is as to the definition of the word "worry," the objection being that the definition given is too limited and narrow, and Webster's definition of the word is cited.

Mr. Webster's definition is general and embraces a worrying by mankind, and other animals besides dogs; while the

court, as was right and proper, confined its definition to dogs. It is impossible for us to conceive how a dog can worry chickens in any other way than by running after, chasing or barking at them. How can a dog harass chickens with "importunity," or "vex," "annoy," "torment," "trouble," or "plague," unless he either runs after, chases or barks at them?

It is claimed the fifth and sixth instructions given by the court are clearly erroneous, because the principle is recognized that the dog can only be killed if caught in the act of worrying the chickens.

The conclusive answer to this is, that such is the statute; and when these instructions are read in connection with the seventh, we are of the opinion quite as favorable a rule was laid down as defendant was entitled to.

It is true the dog was a trespasser, but this fact alone would not justify the killing of him any more than a horse or cow.

Whether the court laid down the law correctly is one thing, and whether the jury correctly applied it to the facts is quite another thing. They are separate and distinct; and yet counsel in their argument seem at times to blend the two together and thereby claim to have established an objection to the law of the case, which is not legitimate by reason of this commingling of propositions of fact and law.

There is no such absence of testimony as will, under the settled practice of this court, warrant us in disturbing the verdict.

AFFIRMED.