| 3 | 489 |
| 30 | 334 |

## Ex Parte S. C. Cooper.

1. Constitutional Law — Dog-tax. — Dogs are not *property* within the meaning of section 1, article 8, of the Constitution of 1876, which provides that all property shall be taxed in proportion to its value. Nor is the power of the Legislature to impose taxes limited to the objects and subjects of taxation specified in said section 1, article 8.

2. Same. — The act of 1876, which, exempting to each family one dog, imposes on all other dogs a "tax" of $1 *per annum*, to be paid by their owners and harborers, under a penalty of $5 and costs, is not technically a tax law, but is more properly a police regulation, and a legitimate exercise of the police power of the Legislature.

3. Same. — The said act of 1876 appropriates the "dog-tax" to the county free schools. This is not in violation of section 3, article 8, of the Constitution, which prohibits the Legislature from applying to public schools more than one-fourth of the general revenue and a poll-tax of $1. This constitutional provision limits the legislative power over the general revenue and the poll-tax, but not its exercise to augment the school fund from other sources than these.

Habeas Corpus sued out to the Court of Appeals.

S. C. Cooper, the relator, complained that he was restrained of his liberty by N. B. Langsford, constable of precinct No. 1 of Ellis County, under a charge of keeping and harboring a dog without having paid a tax of $1 thereupon. Relator was informed and believes that the act of the Legislature which assumed to impose the tax was in violation of sundry provisions of the Constitution, and, therefore, null and void. To his petition he attached, as exhibits, the complaint filed against him before N. G. Davis, a justice of the peace of Ellis County, and also the *capias* for his arrest issued by the justice, and the indorsed return of Langsford, the constable, showing the execution of the *capias* by the arrest of the petitioner; who, for the reasons assigned, prayed the benefit of the writ of *habeas corpus*, etc.

On the filing of the petition the Court of Appeals awarded the writ, to be directed to Langsford, the constable; who, answering, avowed the arrest and detention of Cooper by virtue of the *capias* of the justice of the peace, which he made part of his answer.

The *capias* of the justice was issued January 5, 1878, and commanded the sheriff or any constable of Ellis County to arrest Cooper, and to have him appear, *instanter*, "to

answer the state of Texas on a charge of unlawfully failing to pay, on or before the first day of January, 1878, the tax assessed against him for keeping, owning, and harboring one certain dog in said county, for the year 1877."

The case was argued orally by counsel, and a brief for the state, but none for the relator, is found with the record.

*A. Bradshaw*, for the relator.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J.    The question presented by relator in this proceeding is the constitutionality of an act entitled " An act to levy a tax on the privilege of keeping or harboring dogs, and to provide for the assessment and collection of the same," approved August 19, 1876, and found in the General Laws of the Fifteenth Legislature, page 198, chapter 117. As necessary to an understanding of the question, we copy the following portions of the said act, viz. :

"Whereas there are in many localities in this state a very large number of dogs, and there are strong indications of a prevalence of hydrophobia, from which much danger will result to the lives and property of citizens ; therefore,

" Section 1. *Be it enacted by the Legislature of the state of Texas*, That the keeping of dogs shall be a privilege which shall be taxed as follows :    Every owner or harborer of a dog or dogs shall pay one dollar ($1) on each dog, to be collected as other taxes of the state and county, and paid into the county treasury for the use and benefit of public free schools in the county ; *provided*, that one dog to each family shall be exempt from taxation.

" Sec. 2. That it shall be the duty of the tax-assessors to enumerate and assess, as hereinbefore provided, every dog within his county on the first day of January of each year, and the tax-collector shall collect the same.    The assessor

shall cause each person to state on oath the number and kind of dogs owned or harbored by him or her.

"Sec. 3. That, if any person shall keep a dog that has been assessed for taxes under this act, and fail to pay the tax on the same on or before the first day of January next after said assessment is made, he or she shall be guilty of a misdemeanor, and, upon conviction thereof in any court of competent jurisdiction, shall be fined not less than five dollars ($5) and costs for each dog so kept. And it is hereby made the duty of county attorneys to prosecute, upon his own motion, all delinquent tax-payers under this act."

It is unnecessary to copy the other sections of the act.

Now, it is contended that this act is in conflict with, and violative of, the following provisions of the Constitution of the state of Texas, viz.: Article 3, section 35; article 7, sections 2, 3, and 5; article 8, sections 1 and 9.

The learned counsel for relator, in his earnest and able oral argument of this case, has elaborated many interesting features in the application of these constitutional provisions to the law as quoted, which, however much we feel inclined to examine and discuss, we find it next to impossible to do so in the present opinion. We are not unmindful of their importance, but, believing that the case must be determined by ascertaining the law with reference to a few of the main points at issue, we select the subjoined propositions, which we state in the shape of three several pertinent interrogatories, viz.:

1. Are dogs "property" in the sense that they are liable to, and can and should, be taxed *ad valorem* as other property?

2. Is the act in question, technically speaking, a tax, or is it a police regulation as contradistinguished from a tax?

3. And, whether a tax or a police regulation, is it in the power of the Legislature, if authorized by the Constitution to adopt it, to divert and appropriate the funds thus arising,

as has been done, from the general revenue fund to the use and benefit of public free schools, when the Constitution itself has provided what shall constitute the permanent and what the available fund for public-school purposes?

Before proceeding with the examination of these questions, it may be proper to call attention to the language of another provision of the Constitution with reference to taxation. Section 17 of article 8 reads as follows: "The specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other objects or subjects to be taxed in such manner as may be consistent with the principles of taxation fixed in this Constitution." We cite this provision to show that the enumeration of subjects of taxation in the preceding sections of the same article does not limit or confine the power of the Legislature to those specified objects and subjects, in passing what might even technically be denominated tax laws.

The word *tax* means burden, charge, or imposition, put or set upon persons or *property*, for public uses. 11 Johns. 77. "In regard to the ownership of live animals, the law has long made a distinction between dogs and cats and other domestic quadrupeds, growing out of the nature of the creatures and the purposes for which they are kept. Beasts which have been thoroughly tamed and are used for burden, or for husbandry, or for food — such as horses, cattle, and sheep — are as truly property of intrinsic value, and entitled to the same protection, as any kind of goods. But dogs and cats, even in a state of domestication, never wholly lose their wild natures and distinctive instincts, and are kept either for uses which depend on retaining or calling into action those very natures and instincts, or else for the mere whim or pleasure of the owner; and, therefore, although man might have such right of property in a dog as to maintain trespass or trover for unlawfully taking or destroying it, yet he was held, in the phrase of the books, to have 'no

absolute and valuable property' therein which could be the subject of a prosecution for larceny at common law, or even, according to some authorities, of an action of detinue or replevin, or a distress for rent, or which would make him responsible for the trespasses of his dog on the lands of other persons, as he would be for the trespasses of his cattle. Vin. Abr., Trespass, Z, Replevin, A; 2 Bla. Com. 193; 3 Bla. Com. 7; 4 Bla. Com. 234, 235; *Mitten* v. *Fraudrye*, Poph. 161; *Mason* v. *Keeling*, 1 Ld. Raym. 608; *s. c.*, 12 Modern 335; *Read* v. *Edwards*, 17 C. B. (N. S.) 245; *Regina* v. *Robinson*, 8 Cox C. C. 115. And dogs have always been held by the American courts to be entitled to less legal regard and protection than more harmless and useful domestic animals. *Putnam* v. *Payne*, 13 Johns. 312; *Brown* v. *Carpenter*, 26 Vt. 638; *Woolf* v. *Chalker*, 31 Conn. 121." *Blair & Hutchison & Smith* v. *Forehand*, 100 Mass. 136.

In the case of *The State* v. *Marshall*, Mr. Justice Wheeler says: "By the common law, though a man may have such property in these animals as to entitle him to maintain a civil action for an injury done them, yet, as they are not classed among valuable domestic animals, as horses and other beasts of burden, nor among animals *domitiœ naturœ*, which serve for food, as neat cattle, swine, poultry, and the like, the property in them is considered of so base a nature, and they are held in so little estimation as property, that the stealing of them does not amount to larceny. 4 Bla. Com. 236; 1 Hale, 512. But by statute in England very severe penalties are inflicted for the crime of stealing a dog. 4 Bla. Com. 236, note. And in some of the states dogs are by statute placed upon the same footing as other personal property. Whart. Cr. Law, title Larceny; *Heisrodt* v. *Hackett*, 34 Mich. 283. We have in this state no statute upon the subject." 13 Texas, 58.

At the time that decision was made there was no statute

making it malicious mischief to kill a dog, but such animals have since been included in that particular statute. Pasc. Dig., art. 2344. Besides that statute, we know of no other recognizing them among the domestic animals, or as property. These authorities, we think, settle the first proposition, and to the effect that, in law, dogs are not recognized as other property and subject to an *ad-valorem* taxation.

But, second, as was said by Gray, J., in *Blair & Hutchison & Smith* v. *Forehand*, already cited above: "All rights of property are held subject to such reasonable control and regulation of the mode of keeping and use as the Legislature, under the police power vested in them by the Constitution of the commonwealth, may think necessary for the preventing of injuries to the rights of others, and the security of the public health and welfare. In the exercise of this power the Legislature may not only provide that certain kinds of property (either absolutely, or when held in such a manner or under such circumstances as to be injurious, dangerous, or noxious) may be seized and confiscated, upon legal process after notice and hearing, but may also, when necessary to insure the public safety, authorize them to be summarily destroyed by the municipal authorities, without previous notice to the owner — as in the familiar cases of pulling down buildings to prevent the spreading of a conflagration or the impending fall of the buildings themselves, throwing overboard decaying or infected food, or abating other nuisances dangerous to health." 100 Mass. 139, and authorities cited.

In the case of *Tenny, Chairman,* v. *Lenz,* the Supreme Court of Wisconsin say: "Dogs, though possessing many excellent qualities, are liable, by running mad and destroying sheep, to do great mischief. Hence it is strictly a legitimate exercise of the police power 'to regulate the license and keeping of dogs,' as was done by the act referred to. * * * The exercise of that power is based upon

the idea that the business licensed, or kind of property regulated, is liable to work mischief, and, therefore, needs restraints which shall operate as a protection to the public. For this purpose the license-money is required to be paid." 16 Wis. 566.

In *Mitchell* v. *Williams*, Ray, C. J., says: "In *Thorpe* v. *The Rutland & Burlington Railway Company*, 27 Vt. 140, it was held that this police power of the state extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property, within the state. Nor can it be denied that the means adopted are legitimate to secure the end in view. It is a matter of no consequence how the sum charged to the owner of the dog may be collected. If it be deemed more convenient to place it upon the tax duplicate, it does not therefore make it a tax, and subject to the constitutional objection." 27 Ind. 62. See, also, *Morey* v. *Brown*, 42 N. H. 373; *Baker* v *Panola County*, 30 Texas, 86.

And Mr. Cooley, in his work on the Law of Taxation, says: "And, though a tax is sometimes levied for revenue upon the keepers of dogs, it is more usual to require the keeping to be licensed, the principal object being to have some person responsible for every animal of the kind that is protected by the law." Cooley on Tax. 412; see, also, p. 396. It is to be noted that the act we are considering is in harmony with this view, and is "An act to levy a tax on the privilege of keeping or harboring dogs."

3. But, lastly, it is insisted that the 3d section of article 8 of the Constitution, which provides that not more than one-fourth of the general revenue, and a poll-tax of $1, shall be set aside annually for public schools, prohibits the Legislature from setting apart the tax on dogs, also, for school purposes. We do not think the position well taken; the section mentioned, as we conceive, only intended to limit and restrict the Legislature in using and appropriating out

of the general revenue for school purposes to the amount specified, and not as a limit to their right to replenish, or add to, the school fund from other sources. There being no constitutional inhibition upon them with regard to this particular fund, we think that the Legislature, in passing the law imposing the tax, could prescribe the objects to which the money raised should be applied. *Blanding* v. *Burr*, 13 Cal. 343.

Our conclusion of the whole matter is that the act in controversy is not obnoxious to the constitutional objections raised against it, and that it is valid and binding upon the citizens of the state until it is repealed by proper authority. Such being our conclusion, the relator is remanded to the custody of N. B. Langsford, constable of Ellis County, and it is further ordered and adjudged by this court that the relator, S. C. Cooper, pay all the costs of this proceeding on *habeas corpus*.

*Ordered accordingly.*