THE STATE OF KANSAS, *ex. rel. Charles Curtis, County Attorney,* v. THE CITY OF TOPEKA.

1. CITY ORDINANCE *to Regulate, Restrict, and Tax Dogs, Valid.* Statutes and ordinances may be passed, regulating, restricting, or even prohibiting the running at large of dogs in cities; and this although dogs are unquestionably property. The owners, keepers or harborers of dogs in cities may be required to register the same, and to pay a registration fee therefor, although this fee may in one sense be a tax, though not a tax within the meaning of §1, article XI, of the state constitution. Dogs in cities may be classified, and the owners, keepers or harborers thereof may be required to register all the dogs of one class and not the dogs of another class, and to pay a greater registration fee for the registration of the dogs of one class than for the registration of the dogs of another class; and such owners, keepers, or harborers of dogs may also be required to put collars around the necks of their dogs; and any dog found running at large in a city, in violation of the statutes or ordinances, may be summarily destroyed. All this is constitutional and valid, and is "due process of law;" and by the same no one is denied "the equal protection of the laws."

2. LABOR ON STREETS—*Valid Statutes and Ordinances.* Statutes and ordinances requiring two days' work on the streets of cities from each male person between twenty-one and forty-five years of age, or three dollars in lieu thereof, are not unconstitutional or void, although the two days' work imposed may in one sense be "involuntary servitude" imposed upon persons not convicted of crime; and although such work or money may also be assessments or taxes, though not assessments or taxes within the meaning of section I, article XI, of the state constitution; and although the provisions of such statutes and ordinances can be enforced only by proceedings before the police judge without a jury; and although no appeal can be taken from the decision of the police judge to a court with a jury except by entering into a recognizance with security conditioned among other things for the payment of any fine and costs which may be adjudged against the appellant. Nor are such statutes or ordinances void because they provide for taking private property for public use without compensation; nor because they place an embargo upon the right to vote; nor because the work or the payment of the money is imposed upon only a class of persons and not upon all persons.

3. ——— *Jury Trial.* Section 10 of the bill of rights of the state constitution, which provides among other things that "in all prosecutions the accused shall be allowed . . . to have . . . a

speedy public trial by an impartial jury," applies only to criminal prosecutions for violations of the laws of the state, and does not apply to prosecutions for violations of ordinary city ordinances which have relation only to the local affairs of the city.

*Original Proceedings in Quo Warranto.*

ACTION in the nature of *quo warranto*, brought in this court November 13, 1885, in the name of the state of Kansas, to oust the city of Topeka from the exercise of certain powers. The provisions of the constitutions of the United States and of the state of Kansas, and of the statutes and city ordinances applicable to the case, read as follows :

" SECTION 1. Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction." ( U. S. Const., art. XIII, § 1.)

" SEC. 1. . . . Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." (U. S. Const., art. XIV, § 1.)

" SEC. 5. The right of trial by jury shall be inviolate." (Kas. Const., bill of rights, § 5.)

" SEC. 6. There shall be no slavery in this state, and no involuntary servitude except for the punishment of crime, whereof the party shall have been duly convicted." (Kas. Const., bill of rights, § 6.)

" SEC. 10. In all prosecutions the accused shall be allowed to appear and defend in person or by counsel ; to demand the nature and cause of the accusation against him ; to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense." (Kas. Const., bill of rights, § 10.)

" SEC. 1. Every . . . male person of twenty-one years and upwards . . . shall be deemed a qualified elector." (Kas. Const., art. V, § 1.)

" SEC. 1. The legislature shall provide for a uniform and

equal rate of assessment and taxation. . . ." (Kas. Const., art. XI, § 1.)

"SEC. 11. The mayor and council . . . shall have power . . . *Twenty-fifth.* To prevent or regulate the running at large of cattle, hogs, horses, mules, asses, fowls, sheep, goats, dogs, and all other animals, and to cause such as may be running at large to be impounded, and sold to discharge the costs and penalties provided for the violation of such regulations and the expense of impounding and keeping the same, and of such sale, and to regulate and provide for the taxing of owners and harborers of dogs, and to destroy dogs found running at large contrary to any ordinance regulating the same. . . ."

"*Thirty-fourth.* Each city shall constitute a separate road district; and the mayor and council are authorized and empowered to compel each male resident of said city, between the ages of twenty-one and forty-five years, to perform two days' labor, of ten hours each, on the streets, alleys or avenues of said city, or in lieu thereof pay to the street commissioner the sum of three dollars. The city clerk shall make out and certify to the street commissioner and city treasurer, on or before the first day of April of each year, duplicate lists of persons registered by him as voters, between the ages of twenty-one and forty-five years, and the street commissioner shall collect the sum of three dollars from each person so certified by the clerk, or compel such person to perform personally two days' labor on the streets, alleys or avenues of said city. The street commissioner shall, every forty-eight hours, turn over to the city treasurer all moneys collected by him during said time, together with a list of the persons from whom said money was collected, and shall, once each week, make out and deliver to the city treasurer a list of all persons who have performed their two days' labor on the streets. The city treasurer shall place the money collected by the street commissioner in the general-improvement fund. All work or labor done under the provisions of this section shall be under the superintendence of the street commissioner. Each city shall have power to pass all ordinances and to enforce the same by fine, imprisonment, or both, necessary to carry out fully the provisions of this section." (Laws of 1883, ch. 34, § 1, subdiv. 25, 34.)

"SEC. 51. The police judge shall have exclusive original jurisdiction to hear and determine all cases for offenses against the ordinances of the city." (Laws of 1885, ch. 98, § 1.)

"Sec. 60. In all cases before the police judge an appeal may be taken by the defendant to the district court in and for the county in which said city is situated; but no appeal shall be allowed unless such defendant shall within ten days after such conviction enter into recognizance, with sufficient security, to be approved by the judge, conditioned for his appearance at the district court of the county, at the next term thereof, to answer the complaint against him, and for the payment of the fine and costs of appeal if it should be determined against the appellant." (Laws of 1885, ch. 98, § 5.)

"Sec. 65. In all cases not herein specifically provided for, the process and proceedings shall be governed by the laws regulating proceedings in justices' courts in criminal cases, except that no jury shall be allowed before police judge." (Laws 1885, ch. 98, § 7.)

An ordinance of the city of Topeka, No. 568, reads as follows:

"Section 1. No person shall keep a dog in the city of Topeka after such dog has reached the age of six weeks, unless the said person shall comply with the following regulations: The owner, keeper or harborer of any dog shall cause his or her name, with the name and description of the dog, to be registered with the city clerk of said city, in a book to be kept by him for that purpose; and shall pay each year to said city clerk, before any dog is registered, a registration fee of two dollars for each male dog and five dollars for each female dog; and shall keep upon the neck of each dog so registered a suitable metallic or leather collar, with a metallic check or tag, (to be furnished by said city,) and the number and year of registry to be distinctly marked thereon. The city clerk shall keep a suitable book for the registry of dogs, and upon the payment to him of the fee aforesaid he shall register the dog upon which such fee is paid. Any person owning, keeping or harboring any dog in the city of Topeka in violation of the provisions of this section, shall upon conviction thereof in the police court of said city be subject to a fine of not less than four dollars nor more than one hundred dollars, or to imprisonment not exceeding thirty days, or to both such fine and imprisonment.

"Sec. 2. That all registrations of dogs in the city of Topeka, as provided in section one of this ordinance, shall expire on the last day of April in each and every year after the registration of any such dog.

"Sec. 3. It shall be unlawful for any person to permit his

or her dog to run at large in any public place in the city of Topeka at any time without providing such dog with a registered collar as provided by section one of this ordinance.

"SEC. 4. The marshal shall employ a suitable person or persons whose duty it shall be to capture all dogs found running at large in any public place in said city, not having a registered collar in compliance with section one of this ordinance, and place them in a pound to be provided for that purpose; and if the owner does not appear in forty-eight hours after such impounding, and claim and register such dog or dogs, then such persons so employed shall kill the same; the amount to be paid the dog-killers for their services to be fixed by the city council, and the number so killed by him to be reported weekly by the city clerk : *Provided,* That the provisions of this section shall not apply to dogs not owned or harbored in this city, unless they be found at large without any owner or master. It shall be the duty of the city clerk to report and pay over to the city treasurer, once in each week, all moneys collected by him for the registration fee, he taking the treasurer's receipt therefor."

Sections 1, 2 and 3 of an ordinance of the city of Topeka, No. 426, read as follows:

"SECTION 1. Every male resident of the city of Topeka between the ages of twenty-one and forty-five years is hereby required to perform two days' labor of ten hours each on the streets, alleys or avenues of said city, or in lieu thereof to pay to the street commissioner the sum of one dollar and fifty cents per day; and no such person shall be allowed to furnish a substitute to do the work hereby required to be done by him : *Provided,* That any person working one day with his team under the direction of the street commissioner shall be credited in full for two days' work.

"SEC. 2. The street commissioner shall give notice to all persons required by this ordinance to perform work or pay money as aforesaid, of the time and place he will attend and direct the work to be performed, and he shall direct what implements such persons shall bring with which to perform such work; and whenever it shall happen in consequence of sickness, absence from home, or other sufficient cause, that any person so notified shall not be able to perform such work at the time he is so notified, said street commissioner is hereby authorized, upon application being made to him by such per-

son, to permit such person to perform such work at any time prior to the first day of October next ensuing.

"SEC. 3. Any person who, having been notified, shall refuse to do two days' work, or pay the sum of one dollar and fifty cents per day as provided by this ordinance, or who shall appear at the proper time and place in accordance with the notice of the street commissioner and shall neglect or refuse to do a reasonable day's work, shall be deemed guilty of a misdemeanor, and shall upon conviction thereof in the police court of said city be fined in a sum not less than five nor more than ten dollars for each offense."

The opinion herein was filed December 9, 1886.

*G. C. Clemens,* for relator.

*Jasper H. Moss,* city attorney for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action brought originally in this court in the name of the state of Kansas, to oust the city of Topeka from the alleged exercise of various powers. Before submitting the case to the court, the parties entered into the following stipulation :

"It is hereby agreed that all questions submitted by the petition in this case may be dismissed without prejudice, except the first and second allegations of said petition, being the alleged illegal exercise of power in requiring dogs to be registered and to destroy dogs found running at large in said city, and the collection of a road or poll tax from certain of the citizens of said city."

The petition, to the extent stipulated, was dismissed in accordance with the agreement of the parties. The defendant answered, denying that it has exercised any powers not conferred upon it by law, and setting forth its ordinances with respect to dogs, and to road or poll taxes; and the case was submitted to the court upon the petition and the answer.

The plaintiff's first claim is, that the statute and the ordinance regulating the running at large of dogs are unconstitutional and void; and its counsel founds this claim principally upon the proposition that dogs are property, and he cites

6 — 36 KAS.

many authorities to sustain this proposition; but the proposition has seldom if ever been questioned, and so far as this case is concerned it will be admitted.  But it does not follow that, because dogs are property, no statute or ordinance can be passed regulating, restricting or prohibiting the running at large of dogs, or for their destruction in case they are permitted to run at large in violation of law.  Bulls and stallions are also property, and property of a much higher grade than dogs, and yet their running at large may be regulated or prohibited.  Even venomous reptiles, skunks, and hyenas, may be made property; and yet when they are made property it does not follow that their running at large in populous cities cannot be regulated or prohibited.  The plaintiff also cites many authorities to the effect that horses, hogs, cattle and other like valuable property cannot be destroyed or confiscated without a judicial investigation and determination upon proper and legal notice to the owner; but it does not follow from these authorities that the running at large of dogs may not be regulated, restricted or prohibited, or that dogs may not be killed if found running at large in violation of law.  Nor does it follow from these authorities that the killing of dogs found running at large in violation of law is not "due process of law" under both the state and the federal constitutions.  As we have already stated, property in dogs is not of that high character that property in many other things is. (*City of Independence v. Trouvalle,* 15 Kas. 73; *Woolf v. Chalker,* 31 Conn. 121, 127; *Blair v. Forehand,* 100 Mass. 140; *Ex parte Cooper,* 3 Tex. Ct. App. 489; *Leach v. Elwood,* 3 Bradw. 457; 4 Bl. Com. 236.)  Mr. Blackstone, in his Commentaries, speaks of property in dogs as a "base property;" and dogs were not the subject of larceny at common law; and they are seldom assessed for taxation, and seldom have a market value.

It is also claimed that the registration fee required to be paid upon the registration of each dog is a tax, and that it is not levied at a "uniform and equal rate," as required by §1, article XI, of the constitution.  We suppose it will be ad-

mitted that said registration fee is a tax; but clearly it is not that kind of tax contemplated in the aforesaid provision of the constitution. It is a tax levied for the purpose of regulation and restriction, and is not a tax levied merely for the purpose of raising revenue, as that provision contemplates. That it is not unconstitutional because it is a tax, we think follows from the following decisions: *City of Newton v. Atchison,* 31 Kas. 151, and the numerous cases there cited; *Tulloss v. City of Sedan,* 31 id. 165, and cases there cited; *City of Cherokee v. Fox,* 34 id. 16; *Ex parte Cooper,* 3 Tex. Ct. App. 489; *Mitchell v. Williams,* 27 Ind. 62; *Tenney v. Lenz,* 16 Wis. 589; *Van Horn v. The People,* 46 Mich. 183; *Hendrie v. Kalthoff,* 48 id. 306; *Commonwealth v. Markham,* 7 Bush, 486; *Mowery v. Salisbury,* 82 N. C. 175; *Holst v. Roe,* 39 Ohio St. 340; *Cole v. Hall,* 103 Ill. 30.

It is also claimed that all dogs are not taxed alike, and therefore that the tax is invalid. The tax is " a registration fee of $2 for each male dog and $5 for each female dog," where the dogs are more than six weeks old, and no fee where the dogs are less than six weeks old. Now as before stated, this tax is imposed for regulation and restriction, and not merely for revenue; and therefore under the authorities above cited we think it is valid.

The plaintiff also claims that the statute and the city ordinance providing for the summary destruction of dogs found running at large in violation of the ordinance are unconstitutional and void; and it cites as authority many cases, only one of which, however, as we think, can fairly be said to sustain its view; and this authority is not entirely parallel with the present case. This authority is the case of *Mayor of Washington v. Meigs,* 1 MacArthur, D. C. 53. On the other hand, we have numerous authorities which assert the opposite doctrine and fully sustain the validity of the statute and the ordinance put in question in the present case. These authorities are the last nine cases previously cited, and also the following cases: *City of Independence v. Trouvalle,* 15 Kas. 70; *Woolf v. Chalker,* 31 Conn. 121; *Blair v. Forehand,* 100 Mass.

136 ; *Commonwealth v. Palmer*, 134 id. 537; *Haller v. Sheridan*, 27 Ind. 494; *The State v. Cornnall*, 27 id. 120; *Lowell v. Cuthright*, 97 id. 313; *Morey v. Brown*, 42 N. H. 379; *Leach v. Elwood*, 3 Bradw. 453. See also *Bowers v. Fitz Randolph*, Add. (Pa.) 215; *King v. Kline*, 6 Pa. St. 318; *Marshall v. Blackshire*, 44 Iowa, 475. Under the almost unbroken current of authority we think that statutes and ordi-

1. City ordinance to regulate, restrict and tax dogs, valid.

nances may be passed regulating, restricting, or even prohibiting the running at large of dogs in cities, and this although dogs are unquestionably property; that the owners, keepers or harborers of dogs in cities may be required to register the same and to pay a registration fee therefor, although this fee may in one sense be a tax, though not a tax within the meaning of §1, article XI, of the state constitution; that dogs in cities may be classified, and the owners, keepers or harborers thereof may be required to register all the dogs of one class and not the dogs of another class, and to pay a greater registration fee for the registration of the dogs of one class than for the registration of the dogs of another class; and such owners, keepers or harborers of dogs may also be required to put collars around the necks of their dogs; and that any dog found running at large in a city in violation of the statutes or ordinances may be summarily destroyed; and that all this is constitutional and valid, and is "due process of law;" and that by the same no one is denied "the equal protection of the laws."

The plaintiff also claims that the statutes and ordinances with reference to road or poll taxes are unconstitutional and void. It is claimed that they are void for various reasons: First, because they impose "involuntary servitude" upon persons not convicted of crime; second, because they provide for taking private property for public use without compensation; third, because they place an embargo upon the right to vote; fourth, because their provisions are such that they can be enforced only by a proceeding before the police judge, without a jury, and that no appeal can be taken from the decision of the police judge to a court with a jury, except by entering

into a recognizance with security conditioned among other things for the payment of any fine and costs which might be adjudged against the appellant. Of course, work upon the roads or streets as provided for by these statutes and ordi-

<span style="margin">2. Labor on streets — valid statutes and ordinances.</span>

nances is "involuntary servitude;" but it is not that kind of involuntary servitude which comes within the interdiction of § 6 of the bill of rights of the Kansas constitution, or § 1, article XIII, of the United States constitution. It is like service or "involuntary servitude" on juries, or in the militia, or in the army, or in removing snow or ice from sidewalks, gutters, etc., and is not that kind of "involuntary servitude" which is akin to slavery, as the interdicted involuntary servitude mentioned in the state and federal constitutions is. Labor is also property; but it is not taken under these statutes or ordinances without compensation. Good public roads or streets are a sufficient compensation for the labor required to be performed by each individual in keeping them in good order and condition; and this labor, or the money paid in lieu thereof, is imposed and taken as an assessment or a tax, although it is not that kind of assessment or tax mentioned in § 1, article XI of the Kansas constitution, and so far as compensation is concerned, the compensation in this case is just as good as the compensation is in any case where persons are taxed. And although the assessment or tax in this case is levied and imposed only upon a class of persons, to wit, males between twenty-one and forty-five years of age, still it is valid. Neither are the provisions of the foregoing statutes an embargo upon the right to vote; nor are they in contravention of those provisions of the constitution with regard to the right of trial by jury. All these questions and others were involved in the case of *In re Dassler*, 35 Kas. 678; and upon all these questions the decision of this court in that case was against the claims made by the plaintiff in this case. We shall follow that decision. We shall add a few words, however, with regard to the question of the right of trial by jury. The constitution provides that "the right of trial by jury shall be inviolate." (Kas. Const., bill of

rights, § 5.) This means that the right of trial by jury shall be and remain as ample and complete as it was at the time when the constitution was adopted. But at that time parties who were charged with violating city ordinances, or with a failure to work on the streets of cities, were not entitled to a trial by jury. Hence this provision of the constitution has no application to this case. But it is also claimed that under § 10 of the bill of rights of the constitution, "in all prosecutions the accused shall be allowed . . to have . . a speedy public trial by an impartial jury. . ." Now this claim is literally true; and yet it can hardly be supposed, and indeed it has never been supposed, that by this provision of the constitution all the summary remedies heretofore given or exercised in unimportant matters and before inferior courts, tribunals, or magistrates, have been utterly obliterated and destroyed, and in their stead the more tardy, cumbrous and expensive remedy of trial by jury substituted. It is true that the words "all prosecutions" are used in this section, and yet we can hardly suppose that even the plaintiff will claim that the words "all prosecutions," as above used, mean all kinds of prosecutions, civil, criminal, and military. Other words are also used in said section which tend to show that all kinds of prosecutions were not intended; for instance, the words "accused," "accusation," "offense," and "depend," are also used; and *only accused defendants* are given the right to "a speedy public trial by an impartial jury;" and this jury must be a "jury of the *county or district* in which the *offense* is alleged to have been committed." Cities, towns and villages are not mentioned in this section. Now if prosecutions for violations of city ordinances are to be tried only before a jury, at the election of the defendant, why should they not be tried *only before a jury of the city?* Why should city courts go beyond the city for jurors? And we might further say that at common law juries are always composed of twelve men; and such juries have seldom been allowed in courts of special, inferior or limited jurisdiction, such as police courts, justices of the peace or probate courts, or in courts of equity, or in

reviewing courts.    We suppose that the plaintiff will not claim
that juries are required in *all* prosecutions, but only in all
criminal or *quasi* criminal prosecutions.    But will the plaintiff
claim that juries are required before examining magistrates or
in courts martial, or in cases of impeachment before the legis-
lature?    We suppose not; but the plaintiff will undoubtedly
claim that juries are required in all prosecutions before police
courts or police magistrates for violations of city ordinances;
for such is virtually the claim made in this case.    But we do
not think that even this claim of the plaintiff is tenable.    In

3. Jury trial.          our opinion, the words "all prosecutions," as used
                     in § 10 of the bill of rights, were intended to mean
only all criminal prosecutions for violations of the laws of the
state, and were not intended to mean or to include prosecutions
for the violation of ordinary city ordinances which have rela-
tion only to the local affairs of the city.    This is the view that
almost every court of the United States which has had the
subject under consideration has taken concerning similar pro-
visions in the constitutions of their states.    It is well settled
that one and the same act committed by a person in a city
may constitute two offenses — one against the laws of the state,
and the other against the ordinances of the city; and both may
be prosecuted against the offender. (1 Dill. Mun. Corp., § 368,
*et seq.*, and note, and the numerous cases there cited.)    Now this
could not be the case if the language of said § 10 was intended
to include prosecutions for violations of city ordinances as
well as for violations of the laws of the state; for that same
section not only provides that "in all prosecutions the accused
shall be allowed . . to have . . a speedy public
trial by an impartial jury, . ." but it also provides
that the accused shall not "be twice put in jeopardy for
the same offense." Hence if a prosecution for the violation
of a city ordinance is as much a prosecution within the
meaning of said § 10 as a prosecution for the violation of a
state law, and if both kinds of prosecutions can be had for one
and the same act, then the accused would as effectually "be
twice put in jeopardy for the same offense" as if both prose-

cutions were had strictly and exclusively under the laws of
the state. As lending support to the proposition that the
words "all prosecutions," used in § 10 of the bill of rights,
were not intended to include prosecutions for violations of city
ordinances, but were intended to include only prosecutions for
violations of the laws of the state, we would refer to the follow-
ing cases: *Dyers v. The Commonwealth*, 42 Pa. St. 89; *Borough's
Appeal*, 52 id. 374; *Shafer v. Mumma*, 17 Md. 331; *Williams
v. Augusta*, 4 Ga. 509; *Floyd v. Eatonton*, 14 id. 354; *The State
v. Gutierrez*, 15 La. An. 190; *Pursell v. Porter*, 20 id. 325;
*McGear v. Woodruff*, 33 N. J. L. 213; *Howe v. The Treasurer*,
37 N. J. L. 145; *Trigally v. Memphis*, 6 Coldw. 382. See also
1 Dill. Mun. Corp., § 408, *et seq.*, and § 482, and notes and cases
there cited. Also, in this connection, see the following cases:
*Murphy v. The People*, 2 Cowen, 815; *Boring v. Williams*, 17 Ala.
510; *Tims v. The State*, 26 id. 165; *Work v. The State*, 2 Ohio
St. 296; *Ewing v. Filley*, 43 Pa. St. 384; *Rhines v. Clark*, 51 id.
96; *Johnson v. Barclay*, 16 N. J. L. 1; *The State v. Conlin*, 27
Vt. 318; *In re Dougherty*, 27 id. 325; *Vason v. City of Augusta*,
38 Ga. 542; *Frost v. Commonwealth*, 9 B. Mon. 362; *The State v.
McCory*, 2 Blackf. 5; *Duffy v. The People*, 6 Hill, 75; *Sill v.
Corning*, 15 N. Y. 297; *The People v. Daniell*, 50 id. 274; *The
People v. Fisher*, 20 Barb. 652; *Prescott v. The State*, 19 Ohio
St. 184.

There are a few cases to be found in the reports which hold
that constitutional provisions similar to those contained in
§ 10 of the bill of rights of the Kansas constitution apply to
such offenses against the laws of the state as existed at the
time of the adoption of the constitution, and not to subse-
quently-created offenses. Whether these cases are correct ex-
positions of the law or not, it is not necessary for us now to
determine. But for the purposes of the case we shall assume
that the provisions of said § 10 apply to all prosecutions for
offenses against the laws of the state, without reference to
whether such offenses or similar ones were in existence at the
time of the adoption of the constitution, or were subsequently
created. Also, for the purposes of this case, we shall assume

that if the state should permit cities to pass ordinances attempting to regulate matters not coming within the legitimate scope or purpose of municipal regulation, but coming more properly within the scope and object of state regulation, a person accused of violating such ordinances would have the right to demand a jury trial; for in such a case the prosecutions would to all intents and purposes be state prosecutions, and not merely city prosecutions.; and the state could not by indirection do what it could not do directly. In other words, offenses against the public in general must be prosecuted for the public in general, and with a jury, if the defendant demand it; while offenses against the ordinances of a city regulating only city affairs, may be prosecuted for the city and without a jury. Now this case belongs to the latter class of cases. Streets within a city or other strictly municipal corporation are peculiarly within the management and control of such corporation; they are graded, paved, curbed, guttered and kept in repair by the corporation, and not by the general public; and if they are permitted to become unsafe or dangerous, and injury to individuals results thereby, the corporation itself is liable; and this kind of liability is peculiar to municipal corporations. Neither the state, nor any county, township or road district is ever liable for injuries resulting from defective highways. Only municipal corporations proper are subject to such a liability; and therefore such corporations should have the fullest and most ample power for keeping their streets in good order and in a safe condition; and for this purpose they should have ample power to tax the people residing or holding property within the corporate limits, and to enforce the collection of such taxes. We think they have such power.

We do not think that the plaintiff is entitled to any relief in this case, and therefore its petition will be denied.

All the Justices concurring.