[No. 13120. In Bank. — September 18, 1889.]

# T. W. JOHNSON, APPELLANT, *v.* THADDEUS McCON-NELL, RESPONDENT.

DOGS— MALICIOUS KILLING. — Dogs are property, for the malicious destruction or injury of which an action for damages will lie.

ID. — STATUTORY PROTECTION OF SHEEP — JUSTIFICATION OF KILLING DOGS. — Section 3341 of the Civil Code, authorizing the killing of a dog at the time of finding him, not on the premises of the owner, worrying, wounding, or killing any sheep, does not justify a killing by a party who merely believes that the dog is worrying, wounding, or killing sheep, unless he is actually doing the wrongful act, and is immediately followed up and killed without allowing an escape out of sight, and not merely to prevent the dog from returning and injuring the sheep.

ID. — INSUFFICIENCY OF FINDINGS — WORRYING SHEEP. — The findings in this case held insufficient to sustain a judgment justifying the defendant in killing the dogs of the plaintiff, or to show that they had been actually found worrying sheep when killed.

LXXX. CAL.—35

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion of the court.

*Taylor & Holl,* for Appellant.

Property in a dog is under the protection of the law the same as property in a horse. (Stats. 1887, p. 131; *State* v. *McDuffie,* 34 N. H. 523; 69 Am. Dec. 516; *Wheatley* v. *Harris,* 4 Sneed, 468; 70 Am. Dec. 258; *Parker* v. *Mise,* 27 Ala. 480; 62 Am. Dec. 777; *Mayor etc.* v. *Meigs,* 1 McAr. 53; 29 Am. Rep. 578; *Harrington* v. *Miles,* 11 Kan. 480; 15 Am. Rep. 355; *Ward* v. *State,* 48 Ala. 161; 17 Am. Rep. 31; *Dodson* v. *Mock,* 4 Dev. & B. 146; 32 Am. Dec. 679; *State* v. *Homes,* 17 Mo. 379; 57 Am. Dec. 277; *Perry* v. *Phipps,* 10 Ired. 259; 51 Am. Dec. 387; *Hinckley* v. *Emerson,* 4 Cow. 351; 15 Am. Dec. 383.) Subdivision 2 of section 3341 of the Civil Code is highly penal in its character; it must therefore be strictly construed. (*Triplett* v. *Munter,* 50 Cal. 644; *People* v. *Tisdale,* 57 Cal. 107; *Eskew* v. *Ebberts,* 22 Cal. 263; *Thurn* v. *Alta Telegraph Co.,* 15 Cal. 472.)

*Grove L. Johnson,* for Respondent.

The killing of the dogs was justifiable. (Civ. Code, sec. 3341, subd. 2; *Carpenter* v. *Lippett,* 77 Mo. 242; *Marshall* v. *Blackshire,* 44 Iowa, 475.) The act for the protection of sheep is beneficial, and should be beneficially construed and upheld.

WORKS, J.—This action was brought by the appellant against the respondent to recover the value of three dogs alleged to have been maliciously killed by the latter. The respondent admitted the killing, but justified it on the ground that the dogs were at the time in the act of worrying sheep belonging to his mother and in his charge. As to the fact tending to show such justification, the court found as follows:—

"On the first day of February, 1887, the defendant was in the employment of his mother, Mrs. Ellen M. Wilson, and engaged in attending to and caring for the sheep upon the ranch, in Sacramento County. A portion of said sheep consisted of a band of ewes, about three hundred in number, which were at the time heavy with lamb, and had been segregated from the rest of the sheep and put in a field by themselves for the purpose of giving them more careful attention and protection during the lambing season. This field was at the time a part of Mrs. Wilson's land and in her possession, and it was some three miles from the residence of the plaintiff.

"On the date named, defendant, while at some distance from said field, discovered said ewes running about the field, followed by three or four dogs, which seemed to be chasing them. Thinking said sheep in danger, the defendant immediately went to his house, a quarter of a mile distant, and procuring a repeating rifle, returned to said field. He found the ewes still running about the field in a greatly agitated and frightened manner, pursued by four dogs, which were apparently worrying and injuring them; and the defendant, thinking that said ewes were being so worried and injured and in danger of being killed by said dogs, at once proceeded to and did shoot and kill three of said dogs. That is to say, defendant immediately started after said dogs, when the latter, perceiving him enter the field, turned and ran, when defendant pursued and shot three of them in quick succession, and as soon as he could get in range of them, but not until they had gotten something like a quarter to a half mile from where defendant first started after them. None of the dogs were on the land or premises of the plaintiff when killed."

The court further found that the defendant had never seen the dogs, and did not know to whom they belonged; that he killed them because he believed that it was the

only effectual method of preventing them from returning and injuring the sheep, and not with any malicious or wrongful intent or feeling; that the effect of the chasing of the sheep was to greatly worry and injure them, which was known to defendant when he pursued and killed the dogs; that they were in fact injured and worried thereby; that the plaintiff was the owner of the dogs; that they were never known to molest sheep before this; that they were valuable hunting dogs, trained and educated, and were worth $225.

On these findings the court concluded in favor of the defendant, and rendered judgment accordingly.

The plaintiff moved for a new trial, which was denied, and he appeals.

It is extremely doubtful, from the evidence, whether the dogs were in fact chasing or worrying the sheep at all, or whether they were not hunting in the field where the sheep were, and thereby frightened them, and the court below does not find that they were, but that they *seemed* to be chasing them, and were *apparently* worrying and injuring them, and that the defendant *believed* that they were so doing, and *believed* at the time of killing them that it was the only effectual method of *preventing them from returning* and injuring the sheep. There is no finding that the dogs were in fact worrying the sheep, or that the defendant had reasonable cause to believe they were, except so far as this may be inferred from the finding that they were apparently doing so.

Our code provides: "Any person, on finding any dog or dogs not on the premises of its owner or possessor, worrying, wounding, or killing any sheep, Angora or Cashmere goats, may, at the time of so finding said dog or dogs, kill the same, and the owner or owners thereof shall sustain no action for damages against any person so killing such dog or dogs." (Civ. Code, sec. 3341, subd. 2.)

Dogs are property for the malicious destruction or

injury of which an action for damages will lie. (1 Sutherland on Damages, 802; *State* v. *McDuffie*, 34 N. H. 523; 69 Am. Dec. 516; *Dodson* v. *Mock*, 4 Dev. & B. 146; 32 Am. Dec. 677; *Wheatly* v. *Harris*, 4 Sneed, 468; 70 Am. Dec. 258, and note.) At common law and in some of the states they are not the subject of larceny. (*State* v. *Doe*, 79 Ind. 9; *Ward* v. *State*, 48 Ala. 161.) But even in those states it is held that they are the subject of a criminal prosecution for malicious trespass. (*State* v. *Doe, supra; Kinsman* v. *State*, 77 Ind. 132; *Parker* v. *Mise*, 27 Ala. 480; 62 Am. Dec. 777; *Ward* v. *State, supra.*) In this state they are declared to be property, and made the subjects of larceny. (Pen. Code, sec. 491.) And while it has been said that they have nearly always been held " to be entitled to less regard and protection than more harmless domestic animals," it is equally true that there are no other domestic animals to which the owner or his family can become more strongly attached, or the loss of which will be more keenly felt.

As to these dogs the plaintiff testified:—

"These dogs were trained animals; the setter was trained by a regular dog-trainer, Mr. Schultius; the setter dog was a good retriever. If I dropped anything, I could send him back for it any ordinary distance,—half a mile or so. If I left my coat on the other side of the field when I went to dinner, he would bring it to me. He encouraged my greyhounds to go out and hunt rabbits, and would start the rabbits for the greyhound; he was a good deer-dog, just as well trained as a deer-dog, and would drive deer in the direction of the hunter. He would go around them and bring them up to where I was when I was out hunting with him.

"The St. Bernard was a good watch-dog. He went with my children, and took care of them almost like a human being; he would go with the other dogs, and if they caught a rabbit close he would bring it to the house. I have known him to bring as high as two or three in one

day to the house. My boys could pack anything on him if they were out; if they killed more game than they could pack, they would pack it onto his back.

"The greyhound was a fast dog; we had him trained. We had trained him to go with the other dogs and catch the rabbits, and protect our vineyards. In the country where I live there are a great many rabbits, — jackass rabbits they are called; these animals are very destructive to vineyards; they would eat the young vines, and entirely destroy vineyards; before I got my dogs, my vines were almost entirely destroyed in a single year. I replanted my vineyard, and I got these dogs, and they run and destroyed rabbits to such an extent that I could hardly find a rabbit within half a mile of my place."

While it should be the policy of the law to protect the flocks of the sheep-owner, such dogs as these should not be killed without good cause. Do the findings show that good cause existed in this case? The code provision relied upon allows a dog to be killed by any person *at the time of finding him, not on the premises of his owner, worrying, wounding, or killing any sheep.* The terms of this statute cannot well be misunderstood. It is not sufficient that the party killing the dog shall *believe* he is worrying, wounding, or killing sheep. He must be actually doing the wrongful act to authorize the taking of his life. If the defendant acted on appearances, and believed the dogs were worrying the sheep, he acted at his peril, and was bound to prove that they were doing so in fact. The court having failed to so find, the judgment is not supported by the findings.

It is contended by the appellant that in order to justify the killing, it was necessary to show that they were killed in the very act of worrying the sheep. The code provides that it must be *at the time,* but we are not inclined to give the statute the strict construction contended for. If it had been shown that the dogs were found by the defendant worrying the sheep, and that he

had immediately followed them up and killed them, without allowing them to escape or get out of his sight, we think the killing would have been justifiable. But the court below seems to have laid stress upon the fact that the killing was done to prevent the dogs returning and injuring the sheep, as a justification of the act. We do not so regard it. The only ground upon which the act is made justifiable by the statute is that the dogs were caught in the act of worrying the sheep, and then and there killed.

*Carpenter* v. *Lippett*, 77 Mo. 242, and *Marshall* v. *Blackshire*, 44 Iowa, 475, are relied upon by the respondent. The Missouri statute under which the decision referred to was rendered was entirely different from ours. It made it lawful for any person to kill a dog which had killed or maimed a sheep, at any time and without restriction of any kind. The act rendered the dog forever after an outlaw, and made him the lawful prey of any and all persons.

The Iowa statute provides: "It shall be lawful for any person to kill any dog caught in the act of worrying, maiming, or killing any sheep or lambs, or other domestic animals."

In *Marshall* v. *Blackshire*, 44 Iowa, 475, the court below charged the jury: —

"6. If he caught the dog in the act of killing or worrying his chickens, he was justified in killing him. The fact that his chickens were afraid of the dog, and ran from it, would not authorize the killing, unless the dog was worrying or killing them. To worry means to run after, to chase, to bark at.

"7. It was not necessary that the dog should have been, at the very instant of the shooting, in the act of worrying or killing the defendant's chickens, in order to justify the shooting of it, but if the dog had been worrying or killing the defendant's chickens upon his premises, and at the time he was killed his conduct was

such as to create in the mind of the defendant a reasonable apprehension of continued or renewed worrying or killing, and while under such apprehension, exercising the care and prudence which reasonable men usually exercise under like circumstances, he shot the dog, the shooting was rightful, and the plaintiff cannot recover."

The court, in passing upon this instruction, said: "It is claimed the fifth and sixth instructions given by the court are clearly erroneous, because the principle is recognized that the dog can only be killed if caught in the act of worrying the chickens. The conclusive answer to this is that such is the statute; and when these instructions are read in connection with the seventh, we are of the opinion quite as favorable a rule was laid down as defendant was entitled to. It is true, the dog was a trespasser, but this fact alone would not justify the killing of him, any more than a horse or cow."

We think this case fully sustains the views we have expressed.

The findings fail to show any justification for the act of the defendant in destroying the plaintiff's property, and for that reason the judgment and order appealed from are reversed, and the cause remanded.

Sharpstein, J., Paterson, J., and Fox, J., concurred.

McFarland, J., dissenting.— I dissent. The court finds that the defendant, in the first instance, "discovered the ewes running about the field *followed* by three or four dogs, which seemed to be chasing them." He went to the house, a quarter of a mile distant, for his gun. When he returned, having consumed time enough to walk half a mile, "he found the ewes still running about the field in a greatly agitated and frightened manner, *pursued by four dogs*, which were apparently worrying and injuring them." It is further found that "the effect of the chasing of the sheep was to greatly worry and injure them, which was known to defendant when he

pursued and killed the dogs; that they were, in fact, injuried and worried by said chasing and running." It was also found that defendant did not kill the dogs from any malicious feeling, but to protect the sheep. I think that this plainly brings the defendant within the protection of the statute. He was not compelled to wait until the dogs had actually seized the sheep to see if they were only in the playful exercise of an "educated" trait of character, or if the taste of blood would have aroused a barbaric instinct derived from their wolfish ancestors which would have overcome the discipline of their semi-civilization.

The rule that a man's intentions must be gathered from his conduct applies still more forcibly to dogs; and if a dog be found chasing sheep in a field of his owner's neighbor, the common judgment of mankind is that his intent is bad. In *Marshall* v. *Blackshire*, 44 Iowa, 475, the court, in a case very similar to the case at bar, defines "worry" as follows: "To worry means to run after, to chase, to bark at"; and what the court finds in the case before us constitutes, in my opinion, "worrying" within the meaning of our statute.

I think that the judgment should be affirmed.

BEATTY, C. J., and THORNTON, J., concurred with Mc-FARLAND, J.