## DANIEL A. JOB *v.* AARON HARLAN.

1. Justices of the peace have jurisdiction, concurrent with the courts of common pleas, in suits for injuries to personal property, where damages claimed exceed $100 and do not exceed $300. *McKibben* v. *Lester,* 9 Ohio St. Rep. 627, approved.

2. The filing of the original undertaking for appeal with the clerk, by the appellant, though irregular, is a substantial compliance with the statute, requiring a certified copy of such undertaking to be so filed.

3. The appellee is, necessarily, the "*adverse party*," to whom an undertaking for appeal is payable, and he need not be specially named or referred to in the body of the undertaking when it is entitled in the case and taken and approved by the justice before whom it was tried.

4. The stipulation "that the appellant will prosecute his appeal to effect and without unnecessary delay," by section 112 of the justices' code, is made an independent and indispensable condition of the undertaking, and must be substantially complied with in order to perfect an appeal.

5. An injury to sheep by dogs, by chasing and worrying, is within section 1 of the act of 1852, "for the protection of sheep" (Swan's St. of 1854, 328), and in suits against the owner for such injury it is not necessary to aver or prove that he had knowledge of the vicious propensities of his dog. The rule of the common law, requiring proof of *scienter* in such cases, is abrogated by the statute.

Error to the district court of Greene county.

Harlan sued Job before a justice of the peace to recover $300 damages for chasing, injuring, wounding and killing Harlan's sheep, by a vicious dog, owned and harbored by Job.

Job moved the justice for a nonsuit for want of jurisdiction. This motion was overruled, and on May 29, 1855, Harlan obtained judgment for $76.57 and costs.

May 31, 1855, *Harlan* gave notice of appeal to the common pleas, and the transcript recites that a recognizance for appeal in $100 was entered into by Joseph R. Weakly.

The transcript filed by Harlan in the common pleas, June 7, 1855, does not contain any undertaking for appeal, but with the transcript Harlan filed the original undertaking, executed June 1, 1855, and the same is in these words:

"In the action of Aaron Harlan against Daniel A. Job, I, Joseph R. Weakly, do acknowledge myself bail for the appellant in the sum of one hundred dollars, to be levied of my goods and chattels, lands and tenements, in case the appellant shall be condemned in the action, and shall fail to pay the condemnation money and costs that have or may accrue in the court of common pleas.

"(Signed,)                              J. R. WEAKLY."

The defendant Job moved the common pleas to dismiss the appeal, because:

1. The justice did not make out, nor did the appellant file, "a certified transcript of his proceedings, *including the undertaking for such appeal*," as the statute requires.

2. No such undertaking was given by the appellant with condition as required by the statute.

3. The justice of the peace had no jurisdiction in the case.

The motion to dismiss the appeal was overruled, and the defendant excepted.

At the October term, 1857, of the common pleas, upon issue joined by petition and answer, the cause came to trial to a jury.

Harlan, to maintain the issue on his part, offered evidence, tending to prove, among other things, that Job's dog, with another dog, owned by another person, chased, and thereby damaged his (Harlan's) sheep, in a specified sum per head.

Job' objected to this evidence, unless or until there was proof that he knew, or had notice of the vicious disposition and propensities of his dog.

The court overruled this objection, and the evidence was admitted, and Job excepted, and asked the court to charge the jury that he was not liable for the damage his dog did the sheep, unless he knew that his dog was accustomed or disposed to run or chase sheep, or unless he had notice of his dog's vicious propensities.

The court refused so to charge, but instructed the jury, that if Job's dog did run and chase Harlan's sheep, and thereby injure and damage them, Job was liable, whether he knew his dog was accustomed or disposed to run or chase sheep, or had notice of his vicious propensities or not.

To which refusal and charge Job excepted.

The verdict was in favor of Harlan, for $246.66, and judgment accordingly.

To reverse this judgment, Job filed a petition in error in the district court, insisting that the common pleas erred:

1. In overruling his motion to dismiss the appeal.

2. In sustaining the jurisdiction of the justice of the peace.

3. In sustaining its own jurisdiction.

4. In admitting the evidence objected to by him.

5. In refusing to instruct the jury as requested.

6. In the instructions given.

The district court, at its June term, 1859, affirmed the judgment of the common pleas.

To reverse the judgment of affirmance, Job files his petition in error in this court.

*J. J. Winans*, for plaintiff in error.

*Aaron Harlan*, defendant in error.

PECK, J.—The suit before the justice of the peace, was for the recovery of $300, for injuries to plaintiff's sheep, by the dog of defendant. The cause, after final trial by the justice, was appealed by the plaintiff therein, to the court of common pleas of Greene county, and the first error assigned, is the refusal of that court to dismiss the appeal, for want of juris-.diction in the justice to try it.

This objection, if it be one, was saved to plaintiff it error, it having been made by him before the justice, and over-ruled.

In *McKibben* v. *Lester* (9 Ohio St. Rep. 627), it was· decided, and we think correctly, that the amendatory act of May 1, 1854, conferring concurrent jurisdiction upon justices of the peace, for sums over $100, and not exceeding $300, is to be construed as if embodied in the act which it amends; so that the words, "under the restrictions and limitations *herein* provided," refer to the restrictions and limitations of the original act, after all the amendments made thereto, are introduced into their proper places· therein; and also, that the second section of said amendatory act does not *restrict* the enlarged jurisdiction conferred by the first section, but extends it to suits upon contracts for a still larger amount, where the *balance* claimed to be due does not exceed $300 The rule of construction established in the case cited, is decisive of the question before us. The concurrent jurisdiction conferred by the act extends to *any* suit, for an amount

exceeding $100 and not exceeding $300, as to which the original act had given justices of the peace exclusive jurisdiction for the lesser sum, and prominent among these subjects of exclusive jurisdiction, are actions for injuries to personal property, where the damages claimed do not exceed the sum of $100.

2. Was the defect in the transcript, in not setting forth a copy of the undertaking, such as required a dismissal of the appeal?

Section 113 of the act regulating the jurisdiction and procedure before justices of the peace, provides that in cases of appeal from his final judgment, the justice " shall make out a certified transcript of his proceedings, *including the undertaking taken for such appeal*, and shall, on demand, deliver the same to the appellant or his agent, who shall deliver the same to the clerk of the court, to which such appeal may be taken, on or before the day of the term next following such appeal."

The transcript in this case, does not set forth a copy of the undertaking. It recites that the plaintiff, Harlan, gave notice for an appeal of the case, and that Joseph R. Weakly entered into a recognizance for such appeal, in the sum of $100. The undertaking does not appear to have been ever entered at large upon the docket; but the original undertaking itself, as taken and approved by the justice, was delivered to the clerk by the appellant, together with the transcript, and at the same time.

The thirteenth subdivision of section 203 of the same act, seems to require that the undertaking shall be entered at large upon the docket; but it was held in *Carper* v. *Richards*, decided at the present term (ante, p. 219), that the requirements of that section were merely directory to the justice, and that if the act enjoined was in fact done, the mere omission of the justice to record it at length upon the docket would not prejudice the party. So, too, a literal compliance with section 113 would, perhaps, require the transcript to contain a copy of the undertaking, but a *substantial compliance* with the statutory requisites for perfecting an appeal, is

all that is necessary, and especially so, in appeals from such inferior tribunals.

The object of the requirement is to notify the court, and the adverse party, of the existence and effect of the undertaking which has been executed; and this would be effected as well, if not better, by the exhibition of the original undertaking itself. Regularly, the undertaking, not being a paper used on the trial (sec. 113), should remain on file with the justice before whom it was executed, and a certified copy only transmitted to the appellate court, for its information; still, we think, the filing of the original undertaking, is, as regards the adverse party, a substantial compliance with the statute, requiring a certified transcript of the proceedings, including the undertaking for an appeal.

3. A third ground relied on in the court below, for a dismissal of the appeal, was that the original undertaking filed with the transcript, is not such as the law requires to perfect an appeal, in two particulars: 1st. That it is not executed to the *adverse party*. 2d. That it does not contain, either in substance or effect, the stipulation, that the appellant would "prosecute his appeal to effect, and without unnecessary delay."

Section 112 of the statute reads as follows:

"Sec. 112. The party appealing shall, within ten days from the rendition of the judgment, enter into an undertaking to the adverse party, with at least one good and sufficient surety, to be approved of by such justice, in a sum not less than fifty dollars in any case, nor less than double the amount of the judgment and costs, conditioned: 1. That the appellant will prosecute his appeal to effect, and without unnecessary delay. 2. That if judgment be adjudged against him on the appeal, he will satisfy such judgment and costs. Such undertaking need not be signed by the appellant."

There is nothing in the objection that the undertaking is not, in express words, made to the "*adverse party*." It is entitled in the action, and taken and approved by the justice trying it. The docket shows that Weakly was surety for the appeal of this cause, and that the "appellant" specified in

the undertaking is the plaintiff, Harlan, and the appellee, or "*adverse party*," is, of necessity, the defendant, Job. In this view, the undertaking is a *substantial* compliance with the statute. Besides, section 112, is, in this respect, identical with section 41 of the former statute (Swan's St. of 1841, 512), and yet in the form given on page 527, for a recognizance under that section, the "adverse party" is not named, nor expressly alluded to, and the form there given is identical with the one used in the present case. The legislature, therefore, in using the same words, in the same connection, must be supposed to have sanctioned the legislative construction which had been put upon them

A much more serious question is presented by the objection, that the undertaking does not, in substance nor effect, contain one of the conditions specially required by section 112, above quoted. The condition of the undertaking is, "that the appellant, if condemned in the action, shall pay the condemnation money, and costs that have or may accrue in the court of common pleas." This, in substance and effect, is nothing more than the second requirement of section 112 : "That if judgment be adjudged against the appellant on the appeal, he (the appellant) will satisfy such judgment and costs." The undertaking, it will be perceived, entirely ignores the first requirement of the section, "that the appellant will prosecute his appeal to effect, and without unnecessary delay." This particular requirement was, for the first time, introduced by the act of March 14, 1853. All the previous legislation in regard to the condition of a bond for appeal, is substantially embraced in the second specification ; and the court below, in overruling the motion, probably thought that the first specification was of no practical importance to the appellee, or to any one interested in the litigation. But are we justified in so holding, even if it is difficult to discover the reason and object of the enactment? The legislature had the undoubted right to prescribe the terms upon which appeals might be effected, and when, as in this instance, they deliberately depart from all former legislation, and attach to the exercise of the privilege, an addi-

·tional condition, separately numbered, as in section 112, it is assuming somewhat dangerous ground, for a court to hold that such requirement is unimportant, and may be disregarded altogether.

If the appeal is not filed by the appellant on or before the second day of the next term, and the appellee is aware of his intention to omit filing it, and is himself prepared to docket the appeal, he could probably gain all the advantages by so doing which a suit upon the undertaking, with the added con·dition, would call for. But if, on the other hand, the appellee was absent, prostrated by disease, or confidently relies upon the good faith of the appellee in taking the appeal, or where, as sometimes happens, the term itself consists of but two days, .so that the term passes without any action on his part, he would *probably* be in a worse condition if the undertaking did not contain the stipulation to " prosecute the appeal to effect, and without unnecessary delay."

We do not wish to be understood as indicating the precise legal effect of this clause of the undertaking ; and the foregoing suggestions are made merely to show that we are not justified in holding that an additional stipulation, deliberately .annexed by the legislature, should be altogether ignored as unimportant or unmeaning. Whenever it is sought to enforce that stipulation upon a given state of facts, it will be time ·enough to determine its precise scope and effect.

We think, therefore, that the court below erred in refusing ·to dismiss the appeal for a deficiency in the undertaking, in the absence of an application, on the part of the appellant, to .give the further undertaking authorized by section 122 of the .same statute.

The result to which we have come necessarily reverses the judgment, and we might, perhaps, stop here without disposing of the other errors assigned, which relate to the admission of testimony of injuries to the sheep of the plaintiff, resulting solely from a chasing and worrying by the dog of defendant, without any proof that defendant *knew* of the vicious propen:sities of his animal; and to a charge given to the· jury that ·defendant was liable for such injuries, *although ignorant* that

his dog was accustomed or disposed to run and worry sheep; but inasmuch as the question has been argued, and may possibly arise upon a retrial of the case, we will briefly indicate our present impression in regard to the question, subject, of course, to a reconsideration should it be again presented to us.

There is no doubt but that, at common law, before the owner of such domestic animals can be made liable for injuries inflicted by them, it must be shown that he had knowledge of their vicious propensities. *Kinnion* v. *Davies,* Cro. Car. 487; *Smith* v. *Pelah,* 2 Strange, 1264; *Hudson* v. *Roberts,* 6 Exch. 698; *Vrooman* v. *Lawyer,* 13 Johns. 339.

The propriety of the testimony admitted and the charge given to the jury, depends solely upon the question, whether this acknowledged rule of the common law was changed by the statute of April 23, 1852, upon which the action below was founded, and which reads as follows:

" SEC. 1. That if any dog or dogs shall kill *or injure* any sheep, the owner or harborer of such dog or dogs, *or any of them,* shall be liable for *all* damages that may be sustained thereby, to be recovered by the party injured, before any court having competent jurisdiction.

" SEC. 2. It shall be lawful for any person, at any time, to kill any dog which may be found running, worrying, or injuring sheep."

The third section authorizes any person to kill a dog of wandering habits, when found wandering about off the premises of the owner, and unaccompanied by him, after notice of such wandering habits and neglect, or refusal of the owner to confine him.

It is manifest that this statute does not make the owner's knowledge of the vicious propensities of his dog a prerequisite to a recovery for the injuries done by the dog; and the inference to be drawn from the third section, where *scienter* is *expressly* required, is opposed to any such construction The liability of the owner is declared in express terms, and without any qualification. It is, therefore, obvious that the first section, as to the subjects of recovery embraced

within its provisions, abrogates the rule of the common law.

But it is said that the words " *kill or injure*," as used in the first section, were not intended to include injuries from a mere *worrying*, where neither death nor visible external injury ensued; and it is sought to fortify this construction by the second section of the same act, and the practical construction placed, by township assessors, upon the act of 1859, requiring them to report the number of sheep killed and *injured* by dogs within their respective townships, and the extent of the damage done.

The word " injure," used in the first section, is certainly broad enough to include an injury by means of a chasing or worrying, although no external hurt was occasioned by it. Among the popular significations of the word, as given by lexicographers, are, " to do wrong or harm to "—" to cause loss or detriment to "— " to impair "—" to impair soundness, as of health "—" to damage and lessen the value of."—" to make worse," etc; and there is nothing in the context, we conceive, to show that the word was used in a more restricted sense in the statute.

The second section is not *restrictive* of the words used in the first. It provides that the trespassing animal, if found running, worrying, or *injuring* sheep may be killed. It is protective, and preventive of further injury, but not intended as compensatory for injuries already inflicted. The two sections are not inconsistent with each other. The one authorizes the *killing* of dogs *found injuring* animals, and the other allows a recovery for the *injury already inflicted*. Such being the clear meaning of the language employed, we do not see that a practical construction of township assessors of similar words, in another act, can shed any beneficial light upon the meaning of the section under consideration.

We are of the opinion that there was no error in admitting the testimony objected to, nor in giving the charge set forth in the bill of exceptions.

The judgments of the common pleas and district courts are

hereby reversed, and the cause remanded to the court of common pleas for further proceedings.

SUTLIFF, C.J., and GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.