Feazieb, J.
The two actions were submitted together. The petition *326 against William Kinney is as follows: “Capel! L. Weems, Prosecuting Attorney of Belmont county, Ohio, comes here ino court and gives the court to understand and be informed that the defendant, William Kinney, has usurped and unlawfully holds and exercises the office of member of the school board of the special schooldistrict of Belmont in said county, and as such officer assumes to do and perform all and singular the duties pertaining to such office ;and he being an elector and resident of the village of Belmont, which is included in the territory of the said special school district of Belmont, there being other territory outside of said village in said school district, and being an elector of said special school district, was elected by the qualified electors of said special school district on the second Monday of April, 1899, as a member of said board of education, and thereupon assumed to qualify and act as such member; that at the time of his election and ever since and for several years prior thereto, he has been a duly qualified elected and acting member of the council of the said village of Belmont, said village of Belmont being a municipal corporation organized and incor-, porated under the laws of the state of Ohio; that he was last elected as a member of said council on the first Monday of April, 1899, and proceeded to qualify as a member of the council, and has ever since been acting as a member of said council and assuming to perform all the powers of said office; that when so last elected as a member of said council,he was at the time a member thereto having been theretofore, to-wit, on the first Monday April, 1897, duly elected thereto, and having immediately thereafter duly qualified, and having served continuously from said time until the present time as a member of said council; that said William Kiuney is ineligible to be a memoer as aforesaid of said board of education.
“Whereupon the relator prays that the defendant be required to answer by what warrant he claims to have used, to exercise and enjoy said office as member of the school board of the special school district of Belmont, and that he be adjudged not entitled to and the judgment of ouster therefrom may be pronounced against him, and for all proper relief in the premises.”
The petition against H. H. Kildow is a copy of that *327 against Kinney except name and dates. The decision of one case determines the other. To each petition a general demurrer is interposed.
The proceedings are instituted for the purpose of ousting the defendants from the position of members of the school board of the special school district of Belmont.
The defendants are residents of the incorporated village of Belmont, which is within and is a part of the territory of the special school district; (there being other territory outside of the village in the special school district).
The question presented by the demurrer involves the construction of section 1717 of the Revised Statutes. The clause relied on by the relator, reads, “And no member of council shall be eligible to any other office, or to any position on any board provided for in this title, or created by law, or ordinance of council, except as provided in the seventh division of this title.
For the defendants it is claimed that section 1717 being a part of title twelve, part first of the Revised Statutes, the provision therein that “no member of council shall be eligible to any other office or to any position on any board,” means an officer or board of or for the government of cities and villages.
The actions are important, as they involve the right to hold offices to which the defendants have been elected, and which they are entitled to hold unless they are prohibited by the statute in question. The section reads:“Section 1717. The emoluments of an officer whose election or appointment is provided for in this title, shall in no case.be increased or diminished during the term for which he may be elected or appointed; nor shall any change in compensation affect, any officer whose office is or may, be created under authority of this title, during his term,unless the office is abolished; and a person who resigns or vacates an office shall not be eligible to the same during the time for which he was elected or appointed, when during the time the emoluments are increased; and no member of council shall be eligible to any other office, or to a position on any board provided for in this title, or created by law or ordinance of council, except as provided for in the seventh division of this title. ’ ’
The statute in force prior, to the revision of 1880, and *328 which was codified,as section 1717 of the Revised Statutes, was section 69 of the municipal code passed May 7, 1869, as amended April 18, 1870; 67 Ohio Laws 69; which reads,
“Section 69, The emoluments of no officer, whose election or appointment is required by this act,shall be increased or diminished during the term for which he may have been elected or appointed; nor shall any change of compensation affect any officer whose office shall be created under authority of this act, during his exiaitng term, unless the office be abolished; and no person who shall have resigned or vacated any office shall be eligible to the same, during the time for which he was elected or appointed to serve, when during the same time the emoluments have been increased. No member of council shall be eligible to any other office, or to any position on any board provided for in this chapter, or created by any law or ordinance of council, save as provided in chapter forty-six of this act”.
The paragraph now under consideration was first introduced into the municipal code of 1869 by the above amendment, as follows: “No member of council shall be eligible to any other office,or to any position on any board provided for in this chapter, or created by any law or ordinance of council, save as provided in chapter forty-six of this act”.
Section 69, as thus amended became a part of the municipal code of 1869, and the whole act must be construed as though the amended section was introduced in the place of the original section and passed at the same time.
“An amended section of a statute takes the place of the original section,and must be construed with reference to the other sections,and they with reference to it; the whole statute after the amendment,has the same effect as if re-enacted with the amendment”. State ex rel. v. Cincinnati 52 Ohio St., 419; McKibben v. Lester, 9 Ohio St., 627; Job v. Harlan, 13 Ohio St., 485, 488; Bowers v. Pomeroy, 21 Ohio St., 184, 190; Taylor v. Thorn, 29 Ohio St., 569, 575.
Revised Statutes or a revision of all on a particular subject, presumably have the same construction as the original although the language has been changed.
“A section of the Revised Statutes must be confined in its construction as if it were still a part of the original act from which it was taken”, Ebersole v. Schiller, 50 Ohio St., 701.
*329 “It is a well settled rule, that in the revision of statutes neither an alteration in phraseology, nor the omission or ad1dition of words, in the latter statute, shall be held necessarily, to alter the construction of the former act, And the court is only warranted in holding the construction of a statute when revised, to be changed, where the intent of the legislature to make such change is clear or the language used in the new act'plainly requires such change of construction”. Conger v. Barker, 11 Ohio St., 1, 13; Ash v. Ash, 9 Ohio St., 383, 387.
“Neither an alteration in phraseology,nor the omission or addition of words in the latter statute, necessarily require a change in construction. Conger v. Barker, 11 Ohio St. 1; Sedw. on Stat. and Const. Law, 299, 365; Williams v. The State, 35 Ohio St. 175. The intent to give the new act a different effect from the old, should be clearly manifested”. State ex rel. v. Commissioners of Shelby county, 36 Ohio St., 326, 330; and to the same effect, Allen v. Russell, 39 Ohio St., 336, 337; State ex rel. v. Auditor, 43 Ohio St., 311, 315; State ex rel. v. Stockley, 45 Ohio St., 304, 308-9; Tyler’s Executors v. Winslow, 15 Ohio St., 364, 368; Hamilton v. Steamboat R. B. Hamilton, 16 Ohio St., 428, 442; Boley v. O. L. Ins. & Trust Co. 12 Ohio St., 139, 144; Dutoit v. Doyle, 16 Ohio St., 400, 405; Brower v. Hunt, 18 Ohio St., 311, 338.
Changes in form or phraseology made by the commission to revise the statutes do not carry the weight of presumption that a change in construction was intended as would a change by the legislature.
City of Warren v. Davis, 43 Ohio St., 447 decides, “The words ‘damages arising from any cause’, as used in section 2326 of the Revised Statutes,have the same meaning that the word ‘damages’ has in the original section 66, Ohio Laws, 247,§575;and both expressions apply only to the same causes of action and are limited to the damages of the subject matter, and they do not include damages for personal injuries”.
Section 2326, .is in part first, title twelve; of the Re vised Statutes, and reads: “No person who claims damages, arising from any cause, shall commence suit therefor against the corporation until he files a claim for th.e same with the clerk of the corporation, and sixty days elapse thereafter, to *330 enable the corporation to take such steps as it may deem proper to settle and adjust the claim; but this provision shall not apply to an application for an injunction or other proceeding to which it may be necessary for such applicant to resort in case of urgent necessity”.
The section before revision was section 575,of the municipal code of 1869, and is a part of chapter forty-nine providing for‘‘damages and assessments for public improvements”, and was as follows:
‘‘No claimant for damages shall commence any suit until he Bhall have filed a claim therefor with the clerk of the corporation, and sixty days shall have elapsed thereafter to enable such corporation to appoint assessors to assess such damages, return the same to the proper officers, and sufficient further time shall have elapsed, not exceeding twenty days after the return of the appraisal,to enable the corporation to pay the assessment”.
In City of Warren v. Davis, supra, Follett, J., on page 449, says: ‘‘The statute providing for that revision (72 Ohio L,, 87) gave the commisioners power only to revise and consolidate the general statute laws of the state which may be in force at the time such commission shall make their report”.
In State v. Stout, 49 Ohio St., 270, .Bradbury, J., in construing section 6821 Revised Statutes, page 284 says, ‘‘The law as originally enacted employed the word ‘murder’ instead of the word ‘kill’. The act reading, ‘That if any person shall assault another with intent to commit a murder’ * * * Section 17 S. & S. 262). When the Statutes of the state were revised under and pursuant to the act of March 27, 1875, (72 Ohio L., 87) the commissioners adopted the word ‘kill* in place of ‘murder’, in describing the offense under consideration.
‘‘Malice is a necessary ingredient of either grade of murder under the statutes of this state; and therefore,an assault with intent to commit ‘murder’ necessarily involved malice. If the legislature itself had amended the section in that particular only by deliberately discarding the word murder and substituting for it the word kill, the inference might háve been irresistible, that their purpose was to eliminate the element of malice from the offense; for as it could produce *331 no other effect, that must be held to have been intended or the amendment would have produced no result whatever. It was not the province, however, of the commissioners to amend the statutes so as to change their meaning, but to reduce them into a concise and comprehensive form. Changes of phraseology, therefore, thus introduced, do not carry the weight to which they would be entitled had it been a direct act of the legislature itself”.
If a statute, making criminal the act of the officers of particular institutions, is in the revision put into the general crimes act, and in terms made to embrace all officers, the intent to change the former construction is clear. Doll v. State 45 Ohio St., 445, 448.
Under the rule which I think should be applied in the construction of the Revised Statutes, the result in the case under consideration would result in the same construction whether it is construed as it stood at the time the commissioners made their report, as a part of, and in connection with the municipal code of 1869; or as a part of the Revised Statutes, and in connection with its other provisions.
The great difficulty is in ascertaining the meaning of the legislature in the use of language so destitute of exactness and precision, in the amendment of April 18, 1870; and subsequently carried into the Revised Statutes, and which creates the necessity for a construction.
Bearing in mind, but not here repeating, the recognized maxims and rules for the interpretation of statutes, we should endeavor to ascertain the meaning of the legislature in the use of the words employed.
“All words whether they be in deeds or statutes,or otherwise,if they be general,and not express and precise,shall be restrained unto the fitness of the matter and the person. Bacon, Max. 10; Broom Leg. Max. 275.
“In construing a statute the meaning or intention of the law may be gathered from its words, its object, scope and end, the form of its remedy, and the evils which led to its adoption, that it may be interpreted to work its due effect”. State ex rel. Van Matre v. Buchanan, Wright’s Ohio Reports 233.
“The intention of the law-makers may be collected from the cause or necessity of the act, and statutes are sometimes *332 construed contrary to the literal meaning of the words, It has been decided that a thing within the letter was not within the statute, unless within the intention. The letter is sometimes restrained, sometimes enlarged, and. sometimes the construction is contrary to the letter. 4 Bac., title Statute, J. S 38, 45, 50. ” Burgett v. Burgett, 1 Ohio 469, 481. To the same effect are the following cases: Tracy v. Card, 2 Ohio St., 431, 441; Slater v. Cave, 3 Ohio St., 80, 85; State v. Harmon, 31 Ohio St., 250, 264; Brigel v. Starbuck, 34 Ohio St., 280, 285; Johnson v. State, 42 Ohio St., 207, 210; Board of Education v. Board of Education, 46 Ohio St., 595, 600, 601.
“In gathering the meaning of an act of legislation, the whole act must be taken together, The object to be attained must be considered, and, if necessary to give force to it according to the true spirit and intention of the law giver, words having a general and more limited signification may be enlarged or limited so as to meet the general object of the law”. Horton v. Horner, 16 Ohio, 145, 147.
A construction producing an inconsistent result, should not be. adopted if any other is practicable. Statutes should receive a construction which will give effect to the manifest intention of the legislature. It is said in Henry v. Trustees 48 Ohio St., 671, 675, 676,“We are ‘bound not to stick in the mere letter of law, but rather seek for its reason and spirit, in the mischief that required a remedy and the general scope of the legislation designed to effect it’, Tracy v. Card 2 Ohio St., 431. We are it is true to gather the intent from the language, though this may require a departure from the literal meaning of the words. ‘A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter’. People v. Lacombe 99 N. Y. 49. The true meaning is to be arrived at by taking a view of the whole act, so as to understand its real object. If the apparent meaning of the words at first blush, would lead to a manifest contradiction of the purposes of the enactment, it is the duty of the court to seek some other meaning which will be in accord with that purpose. It is said- by Brinkerhofif, J.,in Terrill v. Auchauer, 14 Ohio St. 87: ‘If the stat *333 ute be fairly susceptible of two different constructions, we are at liberty to choose that one which, while it remedies the mischief aimed at, avoids the absurd or unjust consequences which would flow from the other’ ”,
“The rule that general words used in a statute should be limited to the objects to which it is apparent the legislature intended to apply them, is established upon the authority of the text books and of almost innumerable adjudicated cases. Hardcastle, in an ably written and recent treatise on the construction of statutes, reviews the English cases on the subject from a very early period, and on page 75 says: ‘The question whether, when the legislature have used general words in a statute * * * those words are to receive any (and, if so what) limitation, is one which may sometimes be answered by considering whether the intention of the legislature bn this point can be gathered by other parts of the statute’. And he cites Stradling v. Morgan, Plowden 204, the following language with approval: ‘The judges of the law, in all times past, have so far pursued the intent of the makers of statutes, that they have expounded acts which are general in words, to be but particular where the intent-was particular,and those statutes which comprehend all things in the letter they have expounded to extend to but some things’ ”. Board of Education v. Board of Education, 46 Ohio St., 595, 599, 600.
Bradbury, J., cites in support of the foregoing from Burgett v. Burgett, 1 Ohio, 469; Whitney et al. v. Webb et al, 10 Ohio, 513; Slater v. Cave, 3 Ohio St., 80,and says: “It is unnecessary to refer to all the cases in this state in support of this principle of construction. There is however, one other case to which I desire to refer; it is that of Sawyer v. The State ex rel. Horr, 45 Ohio St., 343. In that case the court was required to construe the statute (84 Ohio Law 240) creating a new judicial circuit and providing for three additional circuit judges, which it provided'should be elected ‘on the first Tuesday of November next’. The court upon a consideration of the whole statute, in connection with the general election law of the state, rejected the language quoted and held that the legislature must have intended the election to be held on the ‘first Tuesday after the first Monday of November’. It was contended in that case *334 that the language was too plain to admit of such construction, but an examination of the opinion of Owen, O. J., will show the holding of the court to be in line with the best considered eases”.
“That which is plainly implied in the language of a statute is as much a part of it as that which is expressed”. Doyle v. Doyle, 50 Ohio St., 330.
The title to an act may be considered to explain its object and solve what is doubtful,'but will not limit its scope if intended otherwise; but cannot be ignored as an index of intefit, and explanatory of the object; but cannot be resorted to when the act is clear and positive but only to remove ambiguities where the intent is not plain, It may be resorted to to limit the construction of language.
The following extracts are from the published opinions of our supreme court as found in the reports. “In giving a construction of any statute, the court must consider its policy, and give it such an interpretation as may appear best calculated to advance its object by effecting the design of the legislature. The great object of the statute in question is clearly expressed in the title prefixed to it. It is for the prevention of frauds and perjuries”. Wilber v. Paine, 1 Ohio, 251, 255.
“The object of our statute appears, from its title, to be the prevention of frauds and perjuries, and although it is said,that the title forms no part of the act (1 Ld. Raym. 77), yet the reason of this doctrine seems to be the practice of parliament, by which the title is prefixed to the statute, at the discretion of the clerk of the house in which the bill originated; but such is not the practice with us. The title is framed in the same manner as the bill, and is sanctioned by the vote of both branches of the legislature; we may, therefore, consider it as explanatory of the object of the law.” Burgett v. Burgett, 1 Ohio, 469, 480; cited and approved in State v. Pugh, 43 Ohio St., 98, 113.
“Although the title to a statute constitutes no part of the law, yet it may well be considered in its construction as furnishing an index by which doubtful matters in the body of a statute may be settled. Especially is this proper where, as in this state, the title is prefixed by a solemn vote of the legislature passing the law”. Steamboat Monarch v. Finley, 10 Ohio, 384, 887.
*335 “True, the title to an act does not constitute any.part of the act; but it may be referred to, in order to explain what is doubtful in the act itself. And well may it be referred to in this case, where, without the title,it would be impossible to conjecture wbat object the legislature could have had in view”. State v. Granville Alexandrian Society, 11 Ohio, 1, 10.
The rule that the title may be looked to in ascertaining the meaning of a statute, instead of the rule as it prevailed at common law in England, was announced by our supreme court in our earliest reported cases, and as early as 1824. If that rule then prevailed, I think it should have more force in construing statutes under the constitution of 1851. Section 16, article 2, provides:”No bill shall contain more than one subject, which shall be clearly expressed in its tilte”.
The municipal code,passed May 7, 1869,is entitled: “An act to provide for the organization and government of municipal corporations,” and divided into forty-one chapters each with a sub-title or heading. Section 69, as it stood before the revision, was part of chapter six entitled,“Officers of Municipal Corporations. ”
The Revised Statutes, in pursuance of ■ a general scheme to systemize our laws, is divided into four parts; each part into titles; titles into divisions; divisions into chapters, each with appropriate sub-titles or headings to designate the subject of legislation.
Section 1717,Revised Statutes,is in part first,“Political”; title twelve “Municipal Corporations;” fourth division,“Executive Officers;” chapter two, “Officers of Cities and Villages”.
Section 93 of the act of 1869, read: “No person shall be eligible as a member of the council, who, at the same time, holds any municipal office, or is an employe under the government of the corporation. ” And is in chapter nine title, “Council of the Corporations”.
Section 1681 of the Revised Statutes reads, “No person shall be eligible as a member of the council who holds any municipal office, or is an employe under the government of the corporation. ” And is in part first, title twelve, third *336 division,“Legislative Department.” Chapter two,“Council and Boards of Aldermen”.
In Board of Education v. Board of Education, supra,the first proposition of the syllabus is: “General words used in one section of a statute may be restrained to particular subjects, where the letter of the words would make it impracticable to accomplish a special object authorized by another section of the same statute”.
Did the legislature, by the use of the words “no member of council shall be eligible to any other office created by law,” use them in their general, or in a limited sense, as applicable to officers of municipal corporations; the subject about which they were legislating?
Taking the municipal code of 1869 as it stood at the time of the revision, the object, as stated in the title and designated by sub-titles, or headings of chapters. The provisions, of other sections of the act. The other parts of amended section 69, in which is used the words: “no officer whose election or appointment is required by this act”, and “any officer whose office shall be created under authority of thiB act.” And in the same paragraph that is claimed to render defendants ineligible, and in connection with the claimed disqualifying words, are used the words “on any board provided for in this chapter, or created by any law or ordinance of council save as provided in chapter forty-six of this act”. The boards saved by this section and in section 1717, Revised Statutes, concerns boards of improvements, boards óf control, and the like, and are only authorized and provided for in the control and management of municipal corporations. We submit the legislature by the use of the words,“created by law”, in conjunction with, “ordinance of council”, intended to designate the same character of office, whether created by law, or by ordinance of council. The latter could only create offices of or for the government of the municipal corporation.
“Where the same word or phrase is used more than once in the same act in relation to the same subject matter and looking to the same general purpose, if in one connection its meaning is clear and in another it is otherwise doubtful or obscure, it is in the latter case to receive the same construction as in the former, unless there is something in the *337 connection in which it is employed, plainly calling for a different construction”. Rhodes v. Weldy, 46 Ohio St., 234
We, have not been cited to, nor have we discovered any other word or phrase in the municipal code as it was before the codification, or in title twelve,Revised Statutes,that will aid the relator in his claimed construction.
We hold that the legislature by amended section 69, and section 1717 of the Revised Statutes,intended to render councilmen ineligible to the same offices; that section 93 of the act of 1869, and section 1681 of the Revised Statutes make the person holding them ineligible to the office of member of the council. That is, no member of council shall at the same time hold and exercise any other office, created by law or ordinance for the government of the corporation.
‘‘Moore v. Given, 39 Ohio St., 661, holds: ‘‘It is the duty of courts in the interpretation of statutes, unless restrained by the letter, to adopt that view which will avoid absurd consequences, injustice or great inconvenience, as none of these can be presumed to have been within the legislative intent”.
Keeping in mind the rules of construction sanctioned by the reported decisions of the supreme court and looking to the object of the statute and the mischief it was intended to guard against, we conclude the intention was to prohibit a councilman from, at the same time, holding any other office, or placing himself in a position where by reason,of such office he might have duties to perform, or a motive to act, inconsistent with his duty to the corporation.
The offices of member of council and of the board of education are not incompatible, and may be held by the same person. The office of member of the board of education is created and the duties of the office prescribed in the Revised Statutes,part second, Political; title third, "Schools”. The object is to provide in that title a harmonious system of public schoos; with the authority to create, maintain and control the same, free from the participation or interference of any officer of a municipal corporation.
The policy of the law as indicated by sections 18, 1020, 1160, and 1268, Revised Statutes, that no person may hold more then one of certain offices,is limited to offices the duties of which are or may be incompatible.
Gapell L. Weems, Prosecuting Attorney for Relator.
W. K. Kennon, for Defendants,
A construction which would deprive the defendants of an office to which they would otherwise be entitled, would be manifestly unjust. And one that would hold a member of council to be ineligible to every other office or position would be opposed to the general policy of our laws, and its effect and application absurd. The only authority cited and relied on by the relator in support of the construction claimed is the case of the State of Ohio ex rel. Frank Monnett, Attorney General v. James C. McMillan, 15 Circuit Court Reports, 163, decided by the circuit court of the second circuit, in which it is held: “A councilman, during his term of office, is ineligible to the office of member of a board of education”.
We regret to decide contrary to the decision of another circuit court. In this case we do so with less reluctance, as it does not appear from the report that the reason, and authorities upon which we base our judgment, were considered by or called to the attention of that court. Usually courts decide the quesitons presented, without going outside to search for questions not made in the record, or suggested in argument,
The demurrers are sustained and petitions dismissed.
(Note — Since the decision of this case; there has been published, 19 Circuit Court Reports, 149, the case of the State of Ohio ex rel. Harvey Keeler, Prosecuting Attorney v. Lee H. Wagar, decided by the circuit court of Cuyahoga county, which may appear to be in conflict with this decision. The question decided was that a trustee of a hamlet, is not by section 1717,Revised Statutes, made ineligible as a member of a board of education. In the syllabus it is said; ‘‘A member of a village council is not eligible as a member of the board of education of a school district which is located within the municipal boundaries”. And in the opinion referring to State ex rel. v. McMillan, 15 Circuit Court Reports, 163, it is said; “we are inclined to think that that holding is right”, Whether a councilman is ineligible to the office of member of a board of education was not necessary to a decision of the case then before them.)