### 1030.   VAUGHN *v.* NELSON.

A dog is such property as to be subject to levy and sale for the debts of his owner.

Certiorari, from Chatham superior court—Judge Cann. January 17, 1908.

Submitted April 22,—Decided November 10, 1908.

*Alexander & Edwards,* for plaintiff in error.

*Oliver & Oliver,* contra.

RUSSELL, J. The only question involved in the present writ of error is whether a dog, under the laws of Georgia, is such property as to be subject to levy and sale. In the present case Nelson sued out an attachment against Hegge, upon the ground of non-residence, to recover the purchase-price of a dog. This attachment was levied upon "one white and liver and ticked pointer bitch, named Maud," as the property of the defendant in the attachment. The plaintiff in error, Vaughn, filed a claim setting

up that the dog was his property. Upon the allegation that the custody of the dog was expensive and risky on account of the tendency of the dog to escape (and the claimant not having replevied the property), an order of sale was obtained, under which she was sold. She was purchased by the defendant in error, Nelson. Upon the trial of the claim case Vaughn moved to dismiss the attachment and the entire proceedings based thereon, upon the grounds, (1) "that dogs are not property under the laws of Georgia, and are not liable to attachment, levy, and sale," and. (2) "that the entire proceeding based upon the attachment was a nullity and of no legal effect." This motion having been overruled, and the judge of the superior court having, upon certiorari, sustained the finding of the court below and adjudged that the dog in question was subject to attachment, levy, and sale, the bill of exceptions in the present case was sued out, to review that judgment.

We are of the opinion that the ruling of the judge of the superior court was correct, and that dogs are as much the subject of property right as are other domestic animals, and therefore, as property, may be levied on and sold. The ruling in *Jemison* v. *Southwestern R. Co.*, 75 *Ga.* 444 (58 Am. R. 476), has frequently been invoked, as it is by the learned counsel in the present instance, to sustain the contrary view and uphold the contention that dogs are in no sense *property*. As we view the *Jemison* case, it is binding as a precedent only in so far as the ruling upon the exact point involved is concerned, and no further. The exact point decided by the Supreme Court in that case is that the presumption of negligence did not arise against a railroad company, where a dog was killed by a railroad train, as in cases of injury to persons or property. But the opinion in the *Jemison* case recognized that even at that time one could have a qualified property in a dog; for it was expressly ruled that, while a right of action for a negligent killing by a railroad company could not be maintained, the owner could recover in an action vi et armis for the wanton and malicious killing of his dog. After having decided the point which was particularly involved in the *Jemison* case, Judge Hall proceeded to say, arguendo: "Dogs are not property in such a sense as makes them assets belonging to an estate of a deceased person, and are never inventoried and appraised,

however numerous or valuable, nor are they subject to levy and sale, *so far as we are informed."* We think that this obiter is not binding, for two good reasons at least. In the first place, we consider the expression "so far as we are informed" as not without great significance, when used by so learned and exact a judge as Judge Hall. It indicated that he was merely expressing an off-hand opinion upon a subject which he recognized was not involved in the adjudication then before him; for if the point had been involved, he would have been informed, and would have ruled according to his information, with unmistakable clearness and directness. In the second place, the statement of Judge Hall, which we have quoted above, was made with reference to the state of affairs with regard to dogs at that time; and since then, in the evolution of dogology, it is a matter of common knowledge that dogs now have a market value, and that many persons earn a livelihood by either raising, buying, selling, training, or exhibiting dogs. On page 446 of the opinion in the *Jemison* case, Judge Hall says: "Dogs seem to have no market value, and the rule of damages in the case of live stock killed by the running of trains could not be applied to them." It is clear that the decision in the *Jemison* case resulted from judicial notice of what was perhaps at that time (1885) the fact, that dogs had no market value, and from the fact that in the particular case no amount of care could have prevented the killing of the dog; the ruling was based upon the decision in a South Carolina case,—Wilson *v.* R. Co., 10 Rich. L. 52,—Judge Hall saying that "it is precisely in point and leaves nothing to be added." Since the decision in the *Jemison* case, the Supreme Court, while declining to overrule it, has continuously tacked away from it; and it can safely be said (as much so as if it had been expressly so held by that court) that the *Jemison* case is not to be extended beyond its peculiar facts.

In *Graham* v. *Smith*, 100 *Ga.* 434 (28 S. E. 225, 40 L. R. A. 503, 62 Am. St. R. 323), the judgment of the superior court, holding that the owner of the dog had such property in it as would enable him to maintain an action in trover for its recovery, was affirmed. We consider the decision in the *Graham* case, unlike that of the *Jemison* case, as direct authority upon the question involved in the case at bar. If one can by trover recover a dog

as his property, and if, as plaintiff, he has the alternative of re-
covering a money verdict for the value of the property and its
hire, then it can not be said either that the dog is not property
or that it is not property having a value. It would seem strange
in actual practice to allow a plaintiff in trover to recover a money
verdict for the value of his dog, and yet allow the defendant to
take the dog, under the plaintiff's very eyes, from the court-
room where the verdict was rendered, protected by immunity from
levy of the execution issued upon the judgment. It is true that
an allusion is made in the opinion in the *Graham* case to the fact
that the action of trover was originally a special action on the
case, in behalf of any person who had either a general or a spe-
cial property in goods, as against any person who wrongfully with-
held them from his possession; but the ruling upon which the
Supreme Court affirmed the judgment of the lower court is broad-
ly stated to be that "at common law and under our statutes the
owner has property in his dog, and not only so, but such prop-
erty right is sufficient to maintain a civil action to recover its
possession." And the decision is said to be based on the author-
ities cited, which include, among others, decisions of the courts
of the District of Columbia, Kansas, Texas, Connecticut, Ten-
nessee, Michigan, Nebraska, and Utah, in which dogs have been
held to be property, as well as 4 Blackstone, 236, and Schouler
on Personal Property, §49. The decision in the *Graham* case
was the first step towards adjusting the law to the changed con-
dition of affairs with regard to dogs as property of value; and
this was followed, as a matter of juridical history, if nothing
more, in *Strong* v. *Ga. Ry. & Elec. Co.,* 118 *Ga.* 515 (45 S. E.
366). While the ruling in the *Strong* case went no further than
to reaffirm the ruling in the *Jemison* case upon the exact point
involved, still the concurring opinion of Justices Cobb and Fish,
in which the opinion of Judge Lumpkin, now Justice Lumpkin,
is quoted at length, clearly indicates, as we think, the limited
scope of the ruling in the *Jemison* case. As conclusive of the
fact that the decision in the *Jemison* case is not in point as to the
question here raised, Justice Beck, in delivering the opinion in
*Columbus R. Co.* v. *Woolfolk,* 128 *Ga.* 631 (58 S. E. 152, 10 L.
R. A. (N. S.) 1136, 119 Am. St. R. 404), and in ruling that one
is liable for the wanton and malicious killing of a dog, states the

fact that the identical question now before us,—that is, whether a dog is property subject to levy and sale,—has never been before the Supreme Court. We therefore have this question presented· to us for the first time in Georgia, with no binding authority upon the exact point. This being true, we see no reason why dogs, many of which are admittedly objects of great value, may not be levied upon and sold as property of a debtor. The writer is not prepared to bemoan the evil associations and untimely death of old Tray, and has had but little association with Fido or Trip, and therefore can take but little part ·in the settlement of the question raised by the briefs as to the value of the faithful watch-dog as a boon of priceless worth. Nor is he prepared to give his sanction to the maledictions pronounced upon the worthless cur. We leave this view of the subject to abler pens. If one is interested in the dog pensive, watchful, mythological, historic, or philosophic, he will find all phases of this many-sided animal portrayed in the opinion of Judge Lumpkin of the Atlanta circuit, as quoted by Judge Cobb in the *Strong* case, supra. We view the dog only from the standpoint of the well-recognized fact, to which we can not shut our eyes, that he is daily bought and sold, raised for profit, trained for profit, exhibited for profit. He may not bear burdens like the famous Flemish dogs of Holland, described by Ouida, and draw the peddler's heavy cart until his withers are unstrung and he drops fainting by the wayside. He may not be valuable as a draft horse. But that he may have value, be it much or little, and therefore must be property, is well evidenced by the facts of this case. The attachment was taken out for the purchase-price of the dog; showing that she was originally sold. She was claimed by the defendant in error,—which implied value; and when sold under judicial process, which is attacked as null and void for the reason that a canine can not be of value, she again brought, even upon the block, a "fancy" figure. For authority in other jurisdictions holding that the dog is property, see Mullaly *v.* People, 86 N. Y. 365, in which it is said, "Large amounts of money are now invested in dogs and they are largely the subject of trade and traffic. In many ways they are put to useful service, and, so far as pertains to their ownership as personal property, they possess all the attributes of other personal property." In Michigan "dogs have value, and

are the property of their owner, as much as any other animal which one may have or keep." Ten Hopen v. Walker, 96 Mich. 236 (55 N. W. 657, 35 Am. St. R. 598). In Lynn v. State, 33 Tex. Cr. 153 (25 S. W. 779), it is held that a homicide even may be justified in the possession or protection of a dog by its owner. There is diversity of opinion and conflict of authority among courts of different States, as to whether a dog can be killed in the exercise of police power, and the owner thus be deprived of his dog without a trial of his right of property, guaranteed by the constitution, but it can not seriously be questioned that the owner may maintain trover, replevin, or trespass against any one taking his dog and converting it to his own use. Many of the decisions holding that a dog is not property are based upon the character of the dog, and the assumption that he is an animal fera naturæ. The Supreme Court of this State, however, in *Wilcox* v. *State,* 101 *Ga.* 563 (28 S. E. 981, 39 L. R. A. 709), held that a dog was classed, in the constitution of this State, as a domestic animal; and this ruling was distinctly reiterated in the *Strong* case, supra. Not only was the dog property under the common law, but in New York, Kansas, Texas, North Carolina, Indiana, New Hampshire, Michigan, Massachusetts and Missouri, dogs have been held to be the subject of property right.

Following the rational trend of modern authority, we are compelled to hold that in Georgia, a dog, whether he be a remote descendant of the small spaniel who changed the current of modern history by saving the life of William of Orange, or carries in his veins the blood of the faithful St. Bernard who rescues the lost traveler from the storm-swept crest of the beetling Alps, may be sold to satisfy even the humblest debt of his owner. For full citation of authority upon this subject, see the very copious notes in 40 L. R. A. 503 et seq.          *Judgment affirmed.*