### 15408. JOHNSTON *v.* WILSON.

In a suit to recover the value of a dog alleged to have been unlawfully killed by the defendant while it was killing his chickens, it was error for the court to instruct the jury, in effect, that the defendant did not have the right to kill the dog if it was worth more than the chickens. In such a case the relative value of the dog and the chickens is but a circumstance to be considered by the jury in deciding the issue of whether or not the killing was justifiable under the circumstances.

DECIDED MAY 14, 1924.

Action for damages; from Oconee superior court—Judge Fortson. February 16, 1924.

J. A. Wilson brought suit against E. P. Johnston to recover $150, the alleged value of a bird-dog, which the petitioner alleged was shot and killed by the defendant wilfully and without justification, at a time when the dog was doing neither the defendant nor his property any damage that would have authorized the killing of such a valuable animal. The defendant, answering, admitted the killing of the dog, but denied that he did so wilfully and without justification, and alleged that immediately before he shot the dog it had killed several of his chickens, and that at the time of the shooting it was attempting to kill other chickens belonging to him. He pleaded also, by way of set-off, that this dog had from time to time killed forty-eight of his chickens, alleged to be worth $1 each; and he prayed for a judgment against the plaintiff for the sum of $48. Upon the trial of the case the plaintiff testified, among other things, that he was the owner of a number of dogs which he kept at his home, usually in an inclosure in the back-yard, but that on Sunday morning (the day the dog was killed) one of his dogs, a Llewellyn setter, given to him by Ty Cobb and worth $150, followed his wife to the schoolhouse, and in returning home it went across the defendant's yard and was shot and killed by the latter. The defendant testified that on one occasion, prior to the time he killed the dog, he "went out to feed the chicks, . . and found several

killed, seven in all, some of them badly mutilated;" that on another occasion "we found chicks scattered all over the yard, fresh killed and some of them warm. We gathered them up, thirty-eight of them. We found tracks of the dog this time further out in the yard, where the ground was soft;" and that on the date he killed the dog he "got the gun and stepped out in the back-yard, to where I could see the dog, and there was a mangled chicken between his feet, and when he jumped and got another one I shot him." He further testified: "These chickens of mine that were killed were white leghorns, and would have cost me one dollar each to have bought them in the open market that size."

The jury returned a verdict in favor of the plaintiff for $2. The defendant made a motion for a new trial, which was overruled, and he excepted.

*W. K. Meadow,* for plaintiff in error.

*F. A. Gillen, John B. Gamble,* contra.

BROYLES, C. J. (After stating the foregoing facts.) The general grounds of the motion for a new trial are expressly abandoned; and the four special grounds of the motion raise but a single question, to wit, did the court err in charging the jury as follows: "But the defendant would not have had the right to kill the dog even though caught in the act of killing chickens, if the value of the dog was greater than the probable damage he would have inflicted then or in the future. In other words, a man has the right to protect his property from the depredations of vicious animals, and, if necessary, to kill the animal, if the value of the property he protects is greater than the value of the dog." Plaintiff in error insists that this charge was error for the following reasons: "(a) It was contrary to the principle of law of force in this State that a man has the right to protect his property, and especially his domestic fowls and animals which are incapable of protecting themselves, from the depredations of dogs, and if necessary, to kill the dog, even though the value of the fowls he so protects is not greater than the value of the dog. (b) Said charge was error for the reason that it was an incorrect statement of the law applicable to the main issue in the case, and peculiarly prejudicial to movant in this case, for the reason that it placed upon him the burden of showing that the value of his fowls which he sought to protect was in excess of the value of the dog which he

killed in attempting to protect them, a greater burden than the law of this State requires him to carry. (*c*) It was contrary to the rule of law of force in this State that one may lawfully and without liability kill a dog which is in the act of killing one's chickens. (*d*) Said charge was especially harmful to movant for the reason that there was evidence submitted to the jury which would have authorized said jury to have found that the value of the chickens which movant sought to protect was not greater than the value of the dog."

Generally speaking, whenever and wherever the dog has been the subject-matter of litigation, counsel and court have been prone to eulogize at length this familiar animal. And, since both this court and the Supreme Court have already followed this time-honored course (see *Vaughn* v. *Nelson,* 5 *Ga. App.* 105, 62 S. E. 708, and *Strong* v. *Ga. Ry. & Elec. Co.,* 118 *Ga.* 515, 45 S. E. 366), we will refrain from any dissertation upon or elaboration of the many splendid qualities of this humble but faithful friend of mankind. However, it does not seem amiss to state, in passing, that the cackling hen and the crowing rooster are far more important to the public weal than is the more conspicuously portrayed canine; for, without these valuable fowls, the great American public would not only be deprived of its favorite breakfast of eggs, but the majority of our people in the rural districts, towns, and cities would be deprived of one of their chief means of combating the high cost of living, and of making their small salaries and small business enterprises carry them and their families through the year. Indeed, since King Cotton, due to the ravages of the boll-weevil, has been dethroned in favor of Queen Diversification, the heretofore lowly hen has come into her own, and, together with the cow and the hog, is rapidly blazing the trail towards a far more prosperous era for the long-suffering farmer of the Southland.

The exception to the charge in the instant case presents, for the first time in this State, the question whether or not a man has the legal right to kill a dog that is attacking his chickens when the relative value of the dog is greater than that of the chickens. There is no statute in Georgia changing the common-law rule that the owner of a domestic animal or fowl which is placed in jeopardy by the attack of a dog has the right to kill the dog for the protection of his property. One of the earliest English cases apply-

ing this principle is that of Wadhurst v. Damme, Cro. Jac. 45
(79 Eng. Reprint, 37), decided by the court of King's Bench
more than three hundred years ago, where it was held that the
keeper of a warren might, without liability, kill a dog that at-
tacked the conies in the warren. That this is the law of this State
is recognized in the case of *Miller* v. *State*, 5 *Ga. App.* 463, 464
(63 S. E. 571). For other decisions adhering to this principle
see: Thompson v. State, 67 Ala. 106 (42 Am. Rep. 101); Minor
v. Coleman, 16 Ala. App. 5 (74 So. 841); Johnson v. McConnell,
80 Cal. 545 (22 Pac. 219); Ford v. Glennon, 74 Conn. 6 (49
Atl. 189); State v. Churchill, 15 Idaho, 645 (19 L. R. A. (N. S.)
835, 98 Pac. 853, 16 Ann. Cas. 947); Brent v. Kimball, 60 Ill.
211 (14 Am. Rep. 35); Dinwiddie v. State, 103 Ind. 101 (2 N. E.
290); Marshall v. Blackshire, 44 Iowa, 475; Farney v. Vanarsdall,
139 Ky. 247 (129 S. W. 589); Livermore v. Batchelder, 141 Mass.
179 (5 N. E. 275); Chapman v. Decrow, 93 Me. 378 (74 Am. St.
Rep. 357); Bowers v. Horen, 93 Mich. 420 (17 L. R. A. 773);
Lale v. Laughlin (Mo. App.), 203 S. W. 244; Brown v. Graham, 80
Neb. 281 (114 N. W. 153); Moebius v. Williams, 84 N. J. L. 540
(87 Atl. 73); Gibbons v. VanAlstyne, 56 Hun. 639 (29 N. Y. S. R.
461); Parrott v. Hartsfield, 20 N. C. 242 (32 Am. Dec. 673);
Job v. Harlan, 13 Ohio St. 485; Finnerty v. Lamareaux, 10 Kulp.
576; Harris v. Eaton, 20 R. I. 81 (37 Atl. 308); Brookerson v.
State, 49 Tex. Crim. Rep. 421; Miller v. Spaulding, 41 Wis. 221.

It is true that in the Georgia case of *Miller* v. *State,* supra,
Judge Powell, who delivered the opinion for the court, said, by
way of obiter dictum, that, "Whether the killing of a dog is
justifiable or not, as related to a civil case, seems to depend upon
whether the killing was done, not necessarily while some act of
depredation was in progress, but under such circumstances as that
the killing was a fair act of prudence on the part of the person
doing the killing, reasonable regard being had to the value of the
dog, the value of the property menaced, and the probability of
present or future depredations." This is but another way of
stating that the relative value of the dog and of the animal
threatened is a circumstance to be considered by the jury in pass-
ing upon the question as to whether or not the killing was justifi-
able under the circumstances. As far as we have been able to
find, this is as far as any court has ever gone in dealing with the

relative value of the animal attacking and the animal attacked; and the charge in the instant case to which exception is taken is not at all in accord therewith, but, on the contrary, states affirmatively that the defendant did not have the right to kill the dog if it was worth more than the menaced chickens.  In the case of Ex Parte Minor, 203 Ala. 481 (83 So. 475), it was held: "The relative values of the dog that was killed and the guinea fowls to be protected by his killing have been held to be 'a proper circumstance for the jury to consider in arriving at a conclusion whether the defense was a reasonable one under the circumstances.' Kershaw *v.* McKown, 196 Ala. 123 (72 So. 47).  But there is no rule of law that the defense against liability for killing the dog must have been based upon a showing that the fowls thus protected were in value equal to or not greatly less than the value of the dog.  Ibid.  That question is comprehended in the issue of reasonable necessity for the killing, and need not be alleged in the plea." So, also, in Anderson *v.* Smith, 7 Ill. App. 354, it was said: "In case of defense of domestic animals from the attacks of other animals, the relative value of the animals may be a proper circumstance for the jury to consider in arriving at a conclusion whether the defense was a reasonable one under the circumstances." Likewise, in Coleman *v.* Minor, 16 Ala. App. 5 (82 So. 42), it was said: "As to whether the necessity to kill in the particular case exists, and whether or not excessive force was used, are questions of fact, in the determination of which the nature of the attack, from what the danger proceeds, the character of the property in peril, the relative importance of the harm threatened (involving a consideration of the relative value of the property), and that which is done in defense, are circumstances that should be submitted to and considered by the jury."  And in Kershaw *v.* McKown, 196 Ala. 123, it was held that the court properly refused to charge that, "if the goat which was being attacked was of less value than that of the dog killed, or if the value of the two was not greatly disproportionate, the verdict should be for the plaintiff for the value of the dog killed, and that, if defendant could have driven the dogs away and thus saved the goats from harm or death, then he had no right to kill the dog."  The same view was taken in Nesbett *v.* Wilbur, 177 Mass. 200 (58 N. E. 586). In that case, which was an action to recover damages for the

alleged unlawful killing of the plaintiff's dog while it was engaged in killing the defendant's hens on his premises, the court said: "No doubt such a justification as that relied on depends upon a number of variable facts: the imminence and nature of the danger, the kind of property in peril, from whom or what the danger proceeds, the relative importance of the harm threatened and that which is done in defense."

Other decisions hold that the relative value of the animals involved is not to be considered at all. For instance, in Sabin v. Smith, 26 Cal. App. 676 (147 Pac. 1180), it was held: "The claim that the dog killed was possessed of a pedigree and had a greater relative value than the fowls injured, and that therefore the killing was unwarranted, is without merit. The right to kill a dog found trespassing is not affected by the relative value of the dog and the property being injured." The same rule was laid down in the recent case of Collinson v. Wier, 154 N. Y. Supp. 951, wherein the court said: "The right to kill a dog found trespassing and endangering property is not affected by the relative value of the dog and the property being injured." And in Simmonds v. Holmes, 61 Conn. 1 (15 L. R. A. 253), the same principle was asserted, although the facts in that case showed that the property sought to be protected was inanimate.

The act of the General Assembly of 1912 (Ga. L. 1912, p. 46), expressly making dogs personal property and subject to taxation, does not change the common-law rule with reference to depredations committed by dogs.

It follows from what has been said that the court erred in charging the jury that "the defendant would not have had the right to kill the dog even though caught in the act of killing chickens, *if the value of the dog was greater than the probable damage he would have inflicted then or in the future.* In other words, a man has the right to protect his property from the depredations of vicious animals, and if necessary, to kill the animal, *if the value of the property he protects is greater than the value of the dog."* (Italics ours.) If this were the correct rule, a keeper of poultry might lose his entire flock of chickens while endeavoring to ascertain whether the attacking dog was worth more than the chickens, and thus be deprived of the right, which the law has given him

23

from the earliest times, to defend his property against the unlawful acts of man or beast.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*